JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JANE DOE, BY AND THROUGH HER NEXT FRIEND, JULIE ROE

**DEFENDANTS**
NORTH PENN SCHOOL DISTRICT

**(b)** County of Residence of First Listed Plaintiff   MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   MONTGOMERY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Laura E. Laughlin, Esquire
Freiwald Law, P.C., 1500 Walnut Street, 18th Floor,
Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☒ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 USC § 1681, et seq. (Title IX) and 42 USC § 1983
Brief description of cause:
Civil rights claims for discrimination under Title IX and violation of U.S. Constitutional and federal rights pursuant to 42 USC § 1983

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/15/2020

SIGNATURE OF ATTORNEY OF RECORD
*Laura Laughlin*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Montgomery County, PA _____

Address of Defendant: _____ 410 E. Hancock Street, Landsale, PA 19446 _____

Place of Accident, Incident or Transaction: _____ North Penn School District _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/15/2020 _____   Must sign here _(signature)_ _____   311896

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

| | | | |
|---|---|---|---|
| **A.** | ***Federal Question Cases:*** | **B.** | ***Diversity Jurisdiction Cases:*** |
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☒ 7. | Civil Rights | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | *(Please specify):* _____ |
| ☐ 11. | All other Federal Question Cases | | |
| | *(Please specify):* _____ | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Laura E. Laughlin _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 10/15/2020 _____   Sign here if applicable _(signature)_ _____   311896

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Jane Doe, by and through her friend, Julie Roe  :    CIVIL ACTION
                                                :
                                                :
                                    v.          :
                                                :
North Penn School District                      :    NO. 2:20 CV 05142

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X )


| 10/15/2020 | Laura E. Laughlin | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-875-8000 | 215-875-8575 | lel@freiwaldlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JANE DOE,<br>by and through her next friend, Julie Roe,<br><br>        Plaintiff,<br><br>v.<br><br>NORTH PENN SCHOOL DISTRICT,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe, by and through her next friend Julie Roe, brings this action against Defendant North Penn School District (the "District") for its violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"), and violations of her rights to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution and federal rights under Title IX, pursuant to 42 U.S.C. § 1983.

## INTRODUCTION

1.      This is a civil rights case brought by Jane Doe, a District student who was sexually assaulted at school over twenty times by a male classmate with a known history of sexual predation. The District has acted with deliberate indifference to Ms. Doe's safety throughout her education. It took no action when teachers witnessed one of the sexual assaults, which occurred when Ms. Doe was in elementary school. It took no action when it learned Ms. Doe was one of several female students sexually assaulted by the same male student. And it caused Ms. Doe to be sexually assaulted by the same student again in high school, placing her in the same class as her assailant and seating them next to one another despite assuring Ms. Doe

that he would have no contact with her at school.

2.      In October 2014, when Ms. Doe was in the sixth grade at Gwynedd Square Elementary School ("Gwynedd"), two teachers witnessed male student "MP"[1] sexually assault her. The teachers did not report this to school administrators or Ms. Doe's parents, and they took no steps to ensure she could attend school safely. Predictably, MP continued to sexually assault Ms. Doe at Gwynedd.

3.      In April 2015, another female student reported to the District that MP had sexually assaulted her, Ms. Doe, and at least three other girls. At that point, MP had sexually assaulted Ms. Doe at school more than ten times—sometimes touching her breasts, sometimes touching her vagina, and sometimes digitally penetrating her vagina. Despite its actual notice of these assaults and the significant danger MP posed to Ms. Doe and her classmates, the District did not take any meaningful action to stop MP from further victimizing Ms. Doe and other students.

4.      That fall, instead of attending her neighborhood middle school, Ms. Doe transferred to avoid sharing a building with MP. She sacrificed educational opportunities and social ties because she and her family had no faith that the District would protect Ms. Doe from MP so long as they shared a school.

5.      She was right. A few years later, when Ms. Doe and MP enrolled in the same District high school, the District made it easy for MP to sexually assault Ms. Doe at least ten more times. Despite meeting with Ms. Doe and her parents and agreeing to keep MP separated from Ms. Doe at school, the District placed MP and Ms. Doe in the same social studies class and

---

[1] For purposes of this Complaint, the then-minor male perpetrator is referred to as "MP," which does not reveal his true initials, in compliance Fed. R. Civ. P. 5.2(a), requiring the protection of a minor person's identity in public court filings.

assigned them seats next to one another.  MP then repeatedly sexually assaulted Ms. Doe at

school for more than a month. As he had before, he touched Ms. Doe's breasts, touched her

vagina, and digitally penetrated her vagina. Eventually, as a result of this abuse and officials'

indifference, Ms. Doe left the District altogether.

6.      Over the course of the last five years, the District has left Ms. Doe and her family

with no choice but for Ms. Doe to transfer schools, and ultimately to be home schooled, in order

to ensure Ms. Doe's well-being and safety. At the same time, the District has permitted MP—a

student reported for repeatedly sexually assaulting female students on school grounds—to

continue his education unaltered, without any meaningful consequences. The District has robbed

Ms. Doe of her elementary, middle, and high school experiences, and subjected her to repeated

sexual assault and harassment committed by a known predator, violating her Constitutional,

federal, and civil rights, and causing her loss of educational benefits, physical and emotional

injury, and other damages.  Ms. Doe seeks injunctive relief and damages to remedy these

violations.

## JURISDICTION

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

this litigation involves matters of federal law, specifically claims under Title IX and claims for

deprivation of civil rights under 42 U.S.C. § 1983 and the U.S. Constitution.

8.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3)

& (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C.

§ 1983.

9.      Venue in this federal district is proper pursuant to 28 U.S.C. § 1391, as all of the

relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this district.

## PARTIES

10.     Plaintiff Jane Doe is a minor and a resident of Montgomery County,

Pennsylvania.[2] She is a high school student who began twelfth grade during the 2020-2021

academic year.

11.     Julie Roe is Ms. Doe's adult sister and next friend for purposes of this lawsuit.

Julie Roe has a significant relationship with Ms. Doe, and she is dedicated to Ms. Doe's best

interests. Julie Roe is a resident of Montgomery County, Pennsylvania.

12.     Defendant North Penn School District is a recipient of federal funds within the

meaning of 20 U.S.C. § 1681(a). The District geographically lies within Montgomery and Bucks

Counties, Pennsylvania.  Gwynedd and North Penn High School ("North Penn") are schools

within the District.

## FACTS

### *The District and Two Teachers Knew that MP*
### *Sexually Assaulted Jane Doe During the 2014-2015 Academic Year*

13.     Ms. Doe attended kindergarten through the sixth grade at Gwynedd, where she

had an Individualized Education Plan ("IEP") for attention-deficit/hyperactivity disorder

("ADHD").

14.     Early on, Ms. Doe's parents informed school officials that Ms. Doe had been

sexually abused by a neighbor when she was five years old and that reminders of the abuse

caused Ms. Doe to suffer anxiety. Defendant knew or should have known that Ms. Doe, as a

young survivor of child sex abuse, was at a heightened risk for being sexually victimized again.

15.     Ms. Doe's guidance counselor, Kristin Vaszily, put a safety plan in place to

---

[2] Jane Doe and her sister, Jane Roe, will be filing a Motion to Proceed Under Pseudonyms to
protect Ms. Doe's identity and privacy as a minor and a victim of sexual harassment, including
sexual assault.

handle potential triggers and to ease Ms. Doe's anxiety when it occurred.

16.     During the 2014-2015 academic year, when Ms. Doe and MP were in the sixth grade, MP sexually assaulted Ms. Doe more than ten times, over and under her clothing, at school.

17.     The sexual assaults, which sometimes involved MP touching Ms. Doe's breasts and/or vagina, and sometimes included digitally penetrating her vagina, happened at various places at Gwynedd—including the classroom, stairways, library, and lunchroom—and sometimes occurred during recess.

18.     In October 2014, two teachers—Ruth Divver and her aide—witnessed one of the sexual assaults.

19.     Ms. Divver pulled Ms. Doe and MP out of the classroom and told them that she would not inform their parents if it did not happen again.

20.     However, despite being mandated reporters, neither teacher reported the assault to Ms. Doe's parents, the school guidance counselor, the District's Title IX Coordinator, or any other administrator.

21.     The teachers also did not take any measures to protect Ms. Doe from MP who, left unsupervised and undisciplined, continued to sexually assault Ms. Doe at school, causing her trauma and painful flashbacks to the abuse she suffered as a five-year-old.  Because the teachers failed to report the sexual assault to Ms. Doe's parents, Ms. Doe was also denied medical treatment that could have helped alleviate the trauma she was suffering.

22.     In April 2015, a female student at Gwynedd reported to school officials that MP had sexually assaulted her and four other girls, including Ms. Doe, and that two teachers had seen one of the assaults against Ms. Doe.

23.     After that report, Ms. Doe's mother received a call from Ms. Vaszily and Gwynedd's Principal, William C. Bowen, informing her of the student's report and asking her to meet with them at school. Ms. Doe's mother and father met with Ms. Vaszily and Mr. Bowen that same day.

24.     During that meeting, Ms. Vaszily explained that another student had come forward saying that she, Ms. Doe, and three other girls had been touched inappropriately by MP and that two teachers had seen MP touch Ms. Doe in a sexually inappropriate way in October 2014. Ms. Vaszily said they believed that this had happened to Ms. Doe more than once.

25.     When Ms. Doe's parents asked the Principal and guidance counselor what action would be taken against MP, the officials responded that he would be disciplined, but that they could not provide any details for supposed student privacy reasons.

26.     When Ms. Doe's parents asked what action would be taken against the teachers that witnessed the sexual assaults, but failed to report them, the school officials said this was a Human Resources and union matter, and they could not provide any further details.

27.     In addition to Gwynedd's Principal and guidance counselor, Dr. Elizabeth Santoro (the District's Director of Elementary Education) and Dr. Deborah McKay (the District's Director of Secondary Education) knew about the reports of MP's sexual assaults and that two teachers had witnessed MP sexually assaulting Ms. Doe in October 2014.  Based on information and belief, Mr. Bowman also informed Dr. Curtis Dietrich (the District's Superintendent of Schools) of the matter.

28.     Dr. Santoro told Ms. Doe's parents that Human Resources was handling the complaint regarding the teachers' failure to report the sexual assaults.

29.     The District never informed Ms. Doe's parents what, if any, measures were taken

to censure the teachers, address or investigate MP's sexual misconduct, discipline MP, or

otherwise stop MP from further victimizing classmates.

      30.    The District did not implement any measures to keep Ms. Doe and MP apart for

her safety.  On information and belief, MP was neither suspended nor expelled, as Ms. Doe

continued to see him in the classroom.

      31.    The District did not inform Ms. Doe's family of Ms. Doe's rights under Title IX,

and it did not offer Ms. Doe any academic services, psychological counseling, or

accommodations to protect her from MP.

### *Jane Doe Transferred to an Out-of-Neighborhood Middle School to Avoid Further Sexual Assault by MP*

      32.    Ms. Doe's "home" or "neighborhood" school for seventh through ninth grade was

Penndale Middle School ("Penndale").

      33.    Ms. Doe's parents understood that both MP and Ms. Doe were scheduled to

attend Penndale starting in Fall 2015.

      34.    Understandably concerned that the District would not protect Ms. Doe from MP

at Penndale, and kept in the dark by the District as to Ms. Doe's Title IX rights, Ms. Doe's

parents felt their only viable option was to request that Ms. Doe be permitted to attend a different

middle school, Pennbrook Middle School ("Pennbrook"), so that she would not encounter MP

and would not be subjected to continued sexual violence or harassment.

      35.    The District ultimately approved the transfer, though it took nearly two months to

do so. Even though it knew the reason for the transfer request, the District did not offer

accommodations or protections so that Ms. Doe could safely remain at her home school. It did

not suggest or require that MP change schools to avoid disrupting Ms. Doe's education path.

      36.    In transferring to Pennbrook, Ms. Doe had to leave behind her friends and attend a

school where she knew almost no other students, which caused her to suffer further anxiety.

### The District Made Jane Doe More Vulnerable to Sexual Assault by MP in Ninth Grade by Failing to Take Appropriate Action to Protect Her

37.     In Fall 2017, Ms. Doe began ninth grade at Pennbrook, and she was admitted to take classes part-time at North Montco Technical Career Center ("North Montco").

38.     Both the District and North Montco had to approve the admission of any District student, like Ms. Doe, to North Montco. Accordingly, the District knew that Ms. Doe would be attending North Montco.

39.     The District also knew, but failed to inform Ms. Doe and her parents, that MP would be attending North Montco at the same time.

40.     In addition, the District did not notify North Montco that MP had sexually assaulted Ms. Doe in the sixth grade or that Ms. Doe had gone to great lengths, including transferring to a different school, to protect herself from MP.

41.     Early in the 2017-2018 academic year, Ms. Doe returned home from school suffering a panic attack and told her parents that she had seen MP in the hallways at North Montco.

42.     Ms. Doe's parents informed Dr. Santoro, Dr. McKay, and Dr. Dietrich of this unacceptably dangerous situation.

43.     The District's administrators wiped their hands of any responsibility, said there was nothing they could do to protect Ms. Doe from MP, and continued to permit MP to attend North Montco, without restriction.

44.     Ms. Doe's parents then contacted Dr. Dawn LeBlanc (Principal of North Montco), and informed her of MP's sexual assaults of Ms. Doe. Given the risk of violence MP posed against Ms. Doe, and that it was traumatizing for Ms. Doe to see the assailant at school, North

Montco created a safety plan for Ms. Doe in an effort to eliminate any contact with MP at school.

45.     Because North Montco, unlike the District, demonstrated at least some minimal care for Ms. Doe's safety, Ms. Doe's parents requested that Ms. Doe be allowed to attend North Montco full time, even though ninth graders typically do not do so. North Montco granted the request.

46.     However, North Montco does not offer any extracurricular or athletic activities to students; students only have access to those educational benefits through their home schools. Ms. Doe, as a full-time North Montco student, had no home school and lost opportunities to participate in such programs.

47.     Moreover, because North Montco did not offer most ninth grade academic classes, Ms. Doe had to take English, Science, and Algebra as online computer courses, which was very difficult for her, especially given her documented ADHD, which was known to the District.

### The District Placed Jane Doe and MP in the Same
### Tenth Grade Class, Where MP Sexually Assaulted Ms. Doe Again

48.     Because Ms. Doe struggled academically while attending North Montco full-time in ninth grade, North Montco suggested that Ms. Doe attend North Montco only part-time in tenth grade.

49.     Ms. Doe and her parents, North Montco, Pete Nicholson (Principal of North Penn High School), and Kyle Hassler (Assistant Principal at North Penn High School) determined that Ms. Doe would split her time between North Montco and North Penn High School, another school in the District, for her tenth-grade year.

50.     On June 12, 2018, Ms. Doe and her mother met with District administrators Dr. Neil Broxterman, Juliet Matje, and Christine Kelly (all District Supervisors of Special

9

Education) and North Montco officials to discuss Ms. Doe's upcoming academic year. Ms. Doe's mother specifically informed both schools that they must protect Ms. Doe from MP, who posed a significant danger to Ms. Doe, and who would also be splitting his time between North Penn and North Montco.

51.     On August 22, 2018, prior to the beginning of the school year, Ms. Doe and her parents met with Ms. Matje, Kate Small (Local Educational Agency representative and District employee), Michele Beach (North Penn teacher), and Megan Schoppe (North Penn special education teacher). Ms. Doe's family reminded both schools that MP must be kept away from Ms. Doe because of MP's prior history of sexually assaulting her, and the school officials agreed. The District officials promised that Ms. Doe and MP would be kept separate and Ms. Small stated she would appoint an escort to accompany Ms. Doe when traveling across North Penn's campus to North Montco.

52.     Despite this agreement and the District's knowledge of the substantial risk that MP posed to Ms. Doe, the District put Ms. Doe in harm's way less than a week later.

53.     When school started on August 28, 2018, North Penn placed Ms. Doe and MP in the same social studies class, with assigned seats next to each other.

54.     Upon information and belief, the District failed to supervise MP at North Penn, despite knowing that he had previously sexually assaulted Ms. Doe and posed a significant danger to her.

55.     Upon information and belief, the District failed to inform North Penn teachers that Ms. Doe must be protected from MP and that the District had agreed to do so.

56.     MP sexually assaulted Ms. Doe in class more than ten times, touching her breasts and/or vagina on top of and underneath her clothing. The sexual assaults also increased in

10

severity and included digital penetration of her vagina. MP also sexually assaulted Ms. Doe on one occasion outside the classroom, while they were at a carnival.

57.     Ms. Doe did not immediately report MP's sexual assaults because she feared retaliation and bullying from MP – a popular student and football star – and his teammates and friends, and because she assumed the District had put them in the same class together because it did not care about her.

58.     On October 9, 2018, after suffering more than a month of MP's sexual assaults, Ms. Doe reported MP's conduct to her guidance counselor at North Montco, Kira O'Brien. North Montco then informed Ms. Doe's mother of the report by phone and provided more detail at a subsequent in-person meeting at school that same day.

59.     The October 9, 2018 meeting was attended by North Montco Principal Dr. LeBlanc, North Montco guidance counselor Kira O'Brien, Towamencin Police Detective Jamie Pierluisse, Ms. Doe, and Ms. Doe's mother.

60.     On October 9, 2018, after the meeting with Ms. Doe's mother, Detective Pierluisse informed North Penn Principal Pete Nicholson of the sexual assaults Ms. Doe had reported. That same day, after speaking with the police detective about the reports that MP had sexually assaulted Ms. Doe again, Mr. Nicholson called Ms. Doe's mother to discuss the matter.

### The District Has Forced Jane Doe
### to Sacrifice Educational Benefits and Opportunities

61.     After Ms. Doe's family learned that the District had put Ms. Doe in harm's way and that MP had sexually assaulted Ms. Doe at school yet again, despite being reassured that Ms. Doe would be safe, Ms. Doe's mother informed North Penn's Principal, Mr. Nicholson, that she viewed the District as responsible for MP's sexual assaults of her daughter, would be removing Ms. Doe from North Penn, and would be sending her daughter to North Montco full time.

62.     Ms. Doe attended North Montco on a full-time basis for the remainder of the 2018-2019 academic year. She could not participate in any extracurricular activities, sports, clubs, or other events like dances because those educational benefits are offered only by "home" schools, not by North Montco.

63.     Even after District officials learned of MP's renewed sexual assaults against Ms. Doe in October 2018, it failed to inform Ms. Doe of her rights under Title IX, failed to identify the District's Title IX Coordinator to the family, and – as far as the Doe family knows – did not take any disciplinary action against MP.  Indeed, the District continued to permit MP to attend North Montco part time, where – as the District knew – Ms. Doe attended school. Ms. Doe saw MP, the same boy who had sexually assaulted her in elementary school and then high school, nearly every single day.

64.     On December 11, 2018, Ms. Doe's mother met with the District's Assistant Superintendent, Todd Bauer, and Supervisor of Special Education for North Penn, Ann Marie Lucas, to express her concerns about the disruption to Ms. Doe's education, and the District's failure to protect Ms. Doe from MP from sixth grade onward.

65.     In May 2019, the District's own psychologist evaluated Ms. Doe and determined that she had a new primary disability, emotional disturbance, and a secondary disability of ADHD.

66.     Ms. Doe's parents, out of continuing concern for Ms. Doe's safety and the fact that the District continued to allow MP to attend North Montco part time, decided that Ms. Doe would be homeschooled for the 2019-2020 academic year. Ms. Doe went through another school year without extracurricular activities, sports, clubs, or other events, like dances. She had to take all of her classes online, which has denied her classroom interaction and socialization, and has

been difficult for her due to her disabilities. Ms. Doe is also being home schooled for the 2020-2021 academic year.

67.     Ms. Doe continues to suffer from substantial anxiety, and she has engaged in self-harming behavior, including cutting. She has lacked a stable educational environment since Fall 2014, and has no solid group of friends. Ms. Doe suffers from social anxiety and, understandably, strongly distrusts teachers and school officials.

### *Defendant Failed to Provide Essential Title IX and Sexual Harassment Training to Administrators, Staff, Students, and Families*

68.     Over two decades ago, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).

69.     In 1999, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to student-on-student sexual harassment, which includes student-on-student sexual assault. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).

70.     Since 1997, the U.S. Department of Education's Office for Civil Rights ("OCR") has repeatedly reminded schools of their responsibility to address sexual harassment and to train their staff accordingly, in policy guidance documents and public communications.

71.     Upon information and belief, despite clear notice by the U.S. Supreme Court and OCR regarding the District's obligations to prevent and remediate the effects of sexual harassment, at all relevant times, the District failed to provide training or education to administrators, staff, students, and families regarding Title IX and student-on-student sexual harassment.

13

72.     Upon information and belief, at all relevant times the District failed to provide training or education to administrators, staff, students, and families on protecting students from sexual harassment, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, remediating sexual harassment, and proper reporting of suspected sexual harassment to the District's employees.

73.     The District's lack of training is evidenced by, among other things, the Gwynedd teachers' failure to report MP's sexual harassment of  Ms. Doe to the District's Title IX Coordinator, any school administrator, or even Ms. Doe's parents; the District's failure to take any meaningful action to protect Ms. Doe from MP's continued sexual harassment at Gwynedd; the District's failure to offer any accommodations or counseling to Ms. Doe after learning that MP had sexually assaulted her at Gwynedd; the District's requiring Ms. Doe to bear the entire burden of protecting herself from MP in middle school, and favoring MP's educational opportunities over Ms. Doe's; the District's failure to take any meaningful steps to protect Ms. Doe from MP at North Penn and putting her in harm's way by placing her in the same class as her harasser, where he continued to sexually assault her; and the District's again forcing Ms. Doe to sacrifice her educational benefits and opportunities to ensure she was safe from MP.

74.     Upon information and belief, at all relevant times, the District had no Title IX coordinator or other employee designated to handle complaints of sexual harassment who was adequately trained in receiving, coordinating, or investigating reports of sexual harassment against students.

75.     At all relevant times, the District officially adopted sexual harassment policies that were inequitable and inadequate with respect to investigating and properly responding to reports of student-on-student sexual harassment, and, in any event, based upon information and

belief, the District failed to provide training or education on those policies to administrators, staff, students, and families.

## CLAIMS FOR RELIEF

### COUNT I
### Deliberate Indifference to Report of Sexual Harassment, in Violation of Title IX, 20 U.S.C. § 1681, *et seq.* (Resulting in a Hostile Educational Environment)

76.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated here.

77.    Ms. Doe suffered repeated sexual harassment by MP at school that was sufficiently severe, pervasive, and objectively offensive that it created a hostile educational environment for her.

78.    The District had substantial control over MP and the context in which he sexually harassed Ms. Doe—namely, on school grounds.

79.    The District had actual notice of MP's sexual harassment of Ms. Doe no later than April 2015, when another female student at Gwynedd reported that MP had sexually assaulted her and four other girls—including Ms. Doe—and Principal Bowen, Dr. Santoro, and Dr. McKay were informed of the report.

80.    Principal Bowen, Dr. Santoro, and Dr. McKay were appropriate persons within the meaning of Title IX, as they had the authority to address the sexual harassment Ms. Doe suffered and institute corrective measures on the District's behalf.

81.    During the 2017-2018 academic year, and in June and August 2018, Ms. Doe and her family reminded District officials, including the District's Superintendent, about MP's prior sexual harassment of Ms. Doe and the substantial danger he posed to her.

82.     The District acted with deliberate indifference to reports that MP had sexually harassed Ms. Doe (and other students) during the 2014-2015 academic year, and reports that MP posed a continuing danger to Ms. Doe, which caused Ms. Doe to suffer a hostile educational environment and further sexual harassment by MP.

83.     The District's response to the allegations of serial sexual harassment by MP, and the continuing danger he posed to Ms. Doe, was clearly unreasonable in light of the known circumstances—which included that two teachers had witnessed MP sexually assault Ms. Doe, that he continued to sexually assault Ms. Doe after the teachers had failed to take action on the harassment they observed, and that MP was alleged to have sexually assaulted at least four other female students during the 2014-2015 school year.

84.     Through its acts and omissions, the District acted with deliberate indifference to the above-described reports about MP by, among other things:

       a.     Failing to appropriately investigate, remedy, and respond to reports that MP had sexually assaulted Ms. Doe and other students during the 2014-2015 school year;

       b.     Failing to take measures to stop MP from further victimizing Ms. Doe and other classmates, including by choosing not to discipline MP meaningfully in 2015 for his serial sexual misconduct;

       c.     Failing to offer or provide educational accommodations, such as academic and psychological counseling, to Ms. Doe after learning of MP's sexual assaults against her during the 2014-2015 school year;

       d.     Failing to inform the Doe family of Ms. Doe's rights under Title IX, or even the identity of the District Title IX Coordinator, if there was such a person in 2015;

       e.     Penalizing Ms. Doe, a sexual assault victim, by forcing her to bear the entire burden of protecting herself from MP, knowing that she was required to transfer schools and sacrifice many educational benefits and opportunities in the process, while allowing MP to continue his education path without modification;

    f.        Permitting MP to continue attending the same school as Ms. Doe for the 2017-2018 and 2018-2019 academic years, particularly without putting a "no contact" order in place to prevent MP from having any contact with Ms. Doe;

    g.        Placing MP in the same tenth grade social studies class as Ms. Doe at North Penn, and seating him directly next to her, where MP repeatedly sexually assaulted her;

    h.        Failing to inform appropriate teachers or staff at North Penn of the substantial danger MP posed to Ms. Doe; and

    i.        Failing to meaningfully supervise or monitor MP at North Penn.

85.    The unchecked sexual harassment deprived Ms. Doe of numerous educational opportunities and benefits. The District's failure to properly address and respond to the sexual harassment Ms. Doe suffered at school forced her to transfer schools multiple times, sacrifice extracurricular activities, suffer further sexual harassment by MP, and ultimately leave school altogether to be homeschooled. At North Montco and in homeschooling, the majority of Ms. Doe's classes were video-based and very difficult for Ms. Doe, given her ADHD. Ms. Doe also has suffered physical, psychological, and emotional harm due to MP's sexual assaults and the District's failure to take appropriate steps to respond to reports of the sexual assaults and prevent further sexual assaults from occurring.

86.    As a direct and proximate result of the District's deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.        Past, present, and future physical and psychological pain, suffering and impairment;

    b.        Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.        Impaired educational capacity and future earning capacity;

    d.        Attorneys' fees and costs; and

e.      Such other and further relief as this Court deems just and proper.

## COUNT II
### Deliberate Indifference to Prior Sexual Harassment,
### in Violation of Title IX, 20 U.S.C. § 1681, *et seq.*
### (Resulting in Further Sexual Harassment)

87.      Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated here.

88.      Before MP sexually assaulted Ms. Doe in the early part of their tenth-grade year, the District had actual notice that MP had sexually assaulted Ms. Doe while they were in sixth grade.

89.      The District also had actual notice that there was a substantial risk that MP would sexually assault Ms. Doe again, if given the opportunity to be in close proximity to her.

90.      District officials, with the actual notice described above, had the authority to address the substantial risk MP posed to Ms. Doe, and had authority to take corrective measures by, among other things, putting a "no contact" order in place that would have prohibited MP from sharing a class with, being in close proximity to, and contacting Ms. Doe; not allowing MP to share a class with Ms. Doe; informing appropriate teachers and staff that MP was not permitted to share a class with or be in close proximity to Ms. Doe; supervising MP to ensure that he was not permitted any contact with Ms. Doe; or not allowing MP to attend the same school as Ms. Doe.

91.      The District's failure to address the substantial risk MP posed to Ms. Doe, given prior reports about his sexual harassment of Ms. Doe and others, was clearly unreasonable in light of the known circumstances.

92.      By its acts and omissions, the District was deliberately indifferent to the substantial risk that MP would sexually assault Ms. Doe again.

93.     As a result of the District's deliberate indifference, Ms. Doe was subjected to severe, pervasive, and objectively offensive sexual harassment by MP yet again in tenth grade.

94.     The District had substantial control over MP and the context in which he sexually harassed Ms. Doe in tenth grade—namely, on school grounds.

95.     The preventable sexual assaults that Ms. Doe suffered in tenth grade were so severe, pervasive and objectively offensive that they deprived her of access to educational opportunities and benefits, including a safe educational environment, forcing her to leave North Penn, sacrifice extracurricular activities and social interaction with peers, and be homeschooled. Ms. Doe also has suffered physical, psychological, and emotional harm due to MP's sexual assaults and the District's failure prevent the repeated sexual assaults in tenth grade from occurring.

96.     As a direct and proximate result of the District's deliberate indifference, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.  Past, present, and future physical and psychological pain, suffering and impairment;

   b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.  Impaired educational capacity and future earning capacity;

   d.  Attorneys' fees and costs; and

   e.  Such other and further relief as this Court deems just and proper.

## COUNT III
### Failure to Train, in Violation of Plaintiff's
### Constitutional and Federal Rights, pursuant to 42 U.S.C. § 1983

97.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

98.     The District is subject to 42 U.S.C. § 1983.

99.     Student-on-student sexual harassment that a school district refuses to remedy is a form of unlawful sex discrimination that violates a student's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

100.    Plaintiff had federal civil rights secured by Title IX of the Education Amendments of 1972, which provides in pertinent part: "[N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

101.    Title IX was intended to benefit students like Ms. Doe.

102.    Title IX provides students like Ms. Doe clear federal rights, which are not amorphous or vague, to be free from known sex discrimination at school.

103.    The U.S. Supreme Court, in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under both Title IX and § 1983 for unlawful sex discrimination.

104.    At all relevant times, the District had unconstitutional customs, policies or practices of failing to properly or sufficiently train administrators, teachers, staff, volunteers, students, and families concerning sex discrimination and sexual harassment against students; Title IX and/or student-on-student sexual harassment; and identifying, investigating, reporting, preventing, and remedying the effects of student-on-student sexual harassment.

105.    At all relevant times, the District had unconstitutional customs, policies or practices of failing to properly or sufficiently train administrators, teachers, staff, volunteers, students, and families concerning school policies on sex discrimination and sexual harassment

20

against students, Title IX and/or student-on-student sexual harassment, and identifying, investigating, reporting, preventing, and stopping student-on-student sexual harassment.

106.    The District failed to provide such training to its administrators, teachers, staff, students, and families despite the patently obvious need for training on, among other things, student-on-student sexual harassment and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment.

107.    Numerous authorities, including the U.S. Supreme Court and U.S. Department of Education, made clear and gave notice to the District that school employees will confront student-on-student sexual harassment and abuse with regularity, given the high predictability, recurrence, prevalence, and injurious nature of such harassment and abuse in schools. Thus, it was foreseeable and inevitable that the District's administrators and employees would encounter recurrent situations involving sexual harassment, including sexual assault, that implicated students' Constitutional and federal rights, and it did, in fact, encounter those recurring situations.

108.    The District failed to adequately train its administrators, teachers, staff, students, and families, and thereby failed to prohibit or discourage foreseeable sexual harassment and assault, despite the clearly established and well-known dangers of sexual abuse, harassment, assault, battery, and violence faced by students in U.S. public schools.

109.    The District failed to provide such training in light of foreseeable consequences that could result from a lack of instruction, including, but not limited to, student-on-student sexual harassment, as Ms. Doe experienced.

110.    The District's failure to train its administrators, teachers, staff, students, and families amounted to deliberate indifference to the rights of students, with whom the District's employees had routine and regular contact.

111.    The District's failure to train its administrators, teachers, staff, students, and families caused Ms. Doe to suffer ongoing sexual harassment in violation of her Constitutional and federal rights.

112.    The District's failure to train administrators, staff, students, and families was deliberate, reckless, and in callous indifference to Ms. Doe's Constitutional and federal rights.

113.    The District's customs, policies, and practices for responding to reports of student-on-student student sexual harassment, including reports of MP's sexual harassment of Ms. Doe and other students, were so clearly inadequate that they give rise to a reasonable inference that the District acquiesced in the sexual harassment.

114.    As a direct and proximate result of the District's deliberate indifference to and violation of Ms. Doe's established Constitutional and federal rights, Ms. Doe suffered, and continues to suffer, injuries for which she is entitled to be compensated, including but not limited to:

      a.    Past, present, and future physical and psychological pain, suffering and impairment;

      b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    Impaired educational capacity and future earning capacity;

      d.    Attorneys' fees and costs; and

      e.    Such other and further relief as this Court deems just and proper.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff requests that the Court enter judgment in favor of Plaintiff and against

Defendant, awarding Plaintiff her compensatory damages in an amount to be established at trial, equitable relief, reasonable attorneys' fees and costs, legal interest, and such other relief as the Court may deem just and proper under the circumstances.

**JURY DEMAND**

Plaintiff respectfully demands a trial by a jury.

Date:   October 15, 2020                     By: _Laura E. Laughlin_

                                                  Laura E. Laughlin (311896)
                                                  FREIWALD LAW
                                                  1500 Walnut Street
                                                  18th Floor
                                                  Philadelphia, PA 19102
                                                  Tel (215) 875-8000
                                                  Fax (215) 875-8575
                                                  lel@freiwaldlaw.com

                                                  Adele P. Kimmel*
                                                  Alexandra Z. Brodsky*
                                                  Adrienne Spiegel*
                                                  PUBLIC JUSTICE
                                                  1620 L Street, NW
                                                  Suite 630
                                                  Washington, DC 20036
                                                  Tel (202) 797-8600
                                                  Fax (202) 232-7203
                                                  akimmel@publicjustice.net
                                                  abrodsky@publicjustice.net
                                                  aspiegel@publicjustice.net

                                                  Monica H. Beck*
                                                  THE FIERBERG NATIONAL LAW
                                                  GROUP, PLLC
                                                  161 East Front Street, Suite 200
                                                  Traverse City, MI 49684
                                                  Tel (231) 933-0180
                                                  Fax (231) 252-8100
                                                  mbeck@tfnlgroup.com

                                                  *pro hac vice motions to be filed