**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                    )
JANE DOE,                                   )
                                                    )
                    Plaintiff,               )
                                                    )
                                                    )
        v.                                        )          Civil Action No. 2:20-cv-5142
                                                    )
NORTH PENN SCHOOL DISTRICT,   )
                                                    )
                    Defendant.             )
_____)

**PLAINTIFF JANE DOE'S MEMORANDUM IN SUPPORT OF
HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………….……..……ii

INTRODUCTION…………………………………………………………………………….…..1

STATEMENT OF UNDISPUTED MATERIAL FACTS……………………………….…….…2

SUMMARY JUDGMENT STANDARD……………………………………………...…...……12

ARGUMENT……………………………………………………………………….……13

   I.  Jane is Entitled to Summary Judgment on the Sexual Harassment and Actual
      Notice Elements of her Title IX Claim for Post-Report Deliberate Indifference………...13

        A.  It is Uncontested that MP Sexually Harassed Jane in Sixth Grade…………...14

        B.  It is Uncontested that the District Had Actual Notice of
            MP's Sixth-Grade Assault on Jane.…………………………………………15

   II.  Jane is Entitled to Summary Judgment on the Actual Notice Element of
      Her Title IX Claim for Pre-Assault Deliberate Indifference……………..……..……..17

CONCLUSION……………………………………………………………………..…....20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)……………………………………………...………………….…12

*Bostic v. Smyrna Sch. Dist.,*
    418 F.3d 355 (3d Cir. 2005)……………………………….…………………...15, 16, 17, 18

*Burton v. Teleflex Inc.,*
    707 F.3d 417 (3d Cir. 2013)…………………………………………….…………………12

*B.W. v. Career Tech. Ctr. of Lackawanna Cnty.,*
    422 F. Supp. 3d 859 (M.D. Pa. 2019)……………………………………………...…15, 16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)……………………………………………………………………12

*Davis v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629 (1999)…………………………………………………………...…………1, 13, 14

*Dawn L. v. Greater Johnstown Sch. Dist.,*
    586 F. Supp. 2d 332 (W.D. Pa. 2008)……………………………………………...……14

*Doe v. Fairfax Cnty. Sch. Bd.,*
    1 F.4th 257 (4th Cir. 2021)…………………….……………….…………………………15

*Doe v. Galster,*
    768 F.3d 611 (7th Cir. 2014)………………………………………………………....15

*Doe C.D. v. Career Tech. Ctr. of Lackawanna Cnty,*
    No. 3:20-0088, 2020 WL 1165837 (M.D. Pa. Mar. 11, 2020)...……………........………… 18

*Doe v. Sch. Bd. of Broward Cnty.,*
    604 F.3d 1248 (11th Cir. 2010)……………………………………………..………18

*Does v. Se. Delco Sch. Dist.,*
    272 F. Supp. 3d 656 (E.D. Pa. 2017)……………………………………..………16

*First Nat. Bank of Ariz v. Cities Serv. Co.,*
    391 U.S. 253 (1968)………………………………………………………...………12

*Gebser v. Lago Vista Indep. Sch. Dist.,*
    524 U.S. 274 (1998)…………………………………………………..………...15

*G.S. ex rel. J.A. v. Sch. Dist. of City of Monessen,*
    No. 11-1643, 2012 WL 1328566 (W.D. Pa. Apr. 17, 2012)...…………………….………...18

*Hall v. Millersville Univ.,*
    22 F.4th 397 (3d Cir. 2022)……………………………………………………..………18

*Jakimas v. Hoffmann-LaRoche, Inc.*,
    485 F.3d 770 (3d Cir. 2007)……………………………………...……………...12

*Mangual v. Prudential Lines, Inc.*,
    53 F.R.D. 301 (E.D. Pa. 1971)……………………………...………...14, 19, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)……………………………………………………………12

*M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*,
    969 F.3d 120 (3d Cir. 2020)………………………………………...…...……15

*Poe v. Se. Delco Sch. Dist.*,
    165 F. Supp. 3d 271 (E.D. Pa. 2015)……………………………….…………16

*S.K. v. N. Allegheny Sch. Dist.*,
    168 F. Supp. 3d 786 (W.D. Pa. 2016)……………………………………..…16

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*,
    250 F.R.D. 203 (E.D. Pa. 2008)……..…………………………………………16

*Warren ex rel. Good v. Reading Sch. Dist.*,
    278 F.3d 163 (3d Cir. 2002)………………………………………….…….....16

*Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist.*,
    400 F.3d 360 (6th Cir. 2005)……………………………………………………18

**RULES**

Fed. R. Civ. P. 30(b)(6)……………………………………………………………16

Fed. R. Civ. P. 56(a)……………………………………………….………………12

Loc. R. 5.1.2(12)(b)…………………………………………………………………1

**STATUTES**

20 U.S.C. § 1681…..…………………………………………………………...1, 13

**MISCELLANEOUS**

8A Charles Alan Wright et al., Fed. Prac. & Proc. § 2103 (Supp. 2007) ………………….…….16

## INTRODUCTION

As a student in North Penn School District, Jane Doe suffered repeated sexual assaults by a classmate, "MP." [1] But she was not the only one: the District received reports that, in addition to Jane, MP had sexually assaulted at least three other female classmates before finishing sixth grade. While Jane and MP were in middle school, the District received another report that MP had sexually harassed two more female classmates in the school cafeteria. Despite the known history of MP's abuse against Jane and other female classmates, the District placed Jane and MP in the same social studies class in tenth grade. Making matters worse, their teacher assigned them seats next to each other in the back of the classroom. Predictably, MP took advantage of his proximity to Jane and sexually assaulted her yet again.

Jane has asserted two claims against the District under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"): (1) a claim for the District's deliberate indifference to reports that MP sexually assaulted Jane in sixth grade, which resulted in a hostile educational environment for her (Count I), and (2) a claim for the District's deliberate indifference to MP's history of sexual harassment, which resulted in MP's (preventable) sexual assaults on Jane in tenth grade (Count II). Compl., Dkt. 1 at 15-19.[2] As explained below, the undisputed facts support summary judgment for Jane on two elements of her Title IX claim in Count I: that MP sexually harassed Jane in sixth grade and that District employees with authority to take corrective action had "actual notice" (also referred to as "actual knowledge") of the harassment. There is no question that at least one employee with authority to take corrective action had received reports

---

[1] "MP" is a pseudonym as required by Local Rule 5.1.2(12)(b) for the names of minor children. The same is true for the names of all other individuals referenced in this memorandum of law, who were minors at the time of the underlying events.

[2] Sexual assault is a form of sexual harassment. *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 647, 649-50 (1999).

alleging that MP had sexually assaulted Jane—which is all that is required to establish that the District had actual notice of the harassment. Indeed, multiple District employees with authority—including the elementary school principal, director of elementary education, assistant superintendent, and superintendent—knew about the harassment allegations. There is also no dispute that MP sexually harassed Jane in sixth grade: After an investigation, the principal concluded that MP's touching of Jane was unwanted and sexual in nature—the very definition of sexual harassment.

The record evidence also supports summary judgment for Jane on the "actual notice" element of her Title IX claim in Count II, as it is undisputed that the District knew MP posed a substantial risk of further sexual harassment when it placed Jane and MP in the same class in tenth grade. Before Jane and MP began tenth grade, the District had received reports that MP had sexually harassed at least five female students—in addition to Jane—during elementary and middle school, had suspended him twice after investigating the reports, and had contacted the state's child abuse hotline to report the allegations of MP's inappropriate sexual touching.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### *MP Sexually Assaulted Jane in Sixth Grade*

1.  Jane began attending Gwynedd Square Elementary School, a school in North Penn School District, as a kindergartener in 2008. Ex. 1, Jane Doe's Student Registration Form.[3] In 2014, when Jane was in sixth grade, she was a student in a language arts class co-taught by Holly Andrew and Ruth Divver at Gwynedd Square. Ex. 2, Jane Doe's Sixth-Grade Report Card; Ex. 3, Deposition

---

[3] At all relevant times in the North Penn School District, elementary school was from kindergarten through sixth grades, middle school was seventh through ninth grades, and high school was tenth through twelfth grades.

of Jane Doe at 30:4-31:7 (Nov. 2, 2021) ("Doe Dep."); Ex. 4, Deposition of Holly Garrett at 36:18-19 (July 28, 2021) ("Garrett Dep.").[4]

2.   On November 17, 2014, Jane was partnered with a male student, MP, to work on a project in language arts class. Ex. 4, Garrett Dep. at 36:19-23; Ex. 3, Doe Dep. at 32:3-6. After Ms. Divver briefly stepped out of the classroom, MP reached underneath Jane's shirt and touched her chest. Ex. 3, Doe Dep. at 33:22-34:22.

3.   Ms. Andrew witnessed MP reach up the front of Jane's shirt. Ex. 4, Garrett Dep. at 37:1-5, 41:20-24. She called both students into the hallway, assumed the sexual touching was consensual, and told them that "if they promise[d] not to do it again" they would not have to go to the principal's office. Ex. 5, June 3, 2015 Ltr. to Andrew from Human Resources Dir. Cheryl McCue ("June 3, 2015 Ltr. to Andrew"), NPSD 1005; Ex. 4, Garrett Dep. at 37:6-12.

4.   After this incident, Ms. Andrew completed "office referral forms" for both Jane and MP, indicating that there had been a minor disciplinary issue with "physical contact" and that she responded to the incident by speaking with the students. Ex. 6, Office Referral Form, NPSD 1023; Ex. 4, Garrett Dep. at 37:12-17. Ms. Andrew gave these forms to the classroom's lead teacher, Ms. Divver, who put them in her files. Ex. 4, Garrett Dep. at 135:21-23.[5]

*The School District Learned of MP's Sexual Assaults of Jane and Other Students*

5.   On April 10, 2015, a Gwynedd Square teacher reported to District guidance counselor Kristen Vaszily that MP had sexually assaulted a classmate of Jane's, "Sara." Ex. 5, June 3, 2015 Ltr. to Andrew, NPSD 1005; Ex. 7, Notes of Gwynedd Square Principal Bill Bowen ("Bowen Notes"), NPSD 1016.

---

[4] Holly Andrew married after the relevant events in this case. Her married name is Holly Garrett.

[5] Over the following months, MP continued to sexually assault Jane regularly during class and in the hallways between classes. Ex. 3, Doe Dep. at 39:14-40:22, 46:4-13.

6.   In an initial interview with guidance counselor Vaszily, Sara reported that MP touched her inappropriately under her shirt during class on April 1 and April 9, 2015. Ex. 7, Bowen Notes, NPSD 1016; Ex. 8, Notes of Director of Elementary Education Betty Santoro ("Santoro Notes"), NPSD 1019; Ex. 9, Notes of Guidance Counselor Kristen Vaszily, NPSD 1024.

7.   Ms. Vaszily shared this information with teacher Ruth Divver, who told Vaszily that there had been a similar incident with MP and Jane earlier in the school year. Ex. 7, Bowen Notes, NPSD 1016. Ms. Vaszily then told Gwynedd Square Principal Bill Bowen about both incidents—Sara's report that MP had sexually assaulted her and Ms. Divver's report about the similar incident between Jane and MP. *Id.*

8.   Principal Bowen investigated the incidents involving both Jane and Sara. Ex. 7, Bowen Notes, NPSD 1016-18. On April 13, 2015, Bowen interviewed MP and specifically asked him about Sara's allegation. Ex. 7, Bowen Notes, NPSD 1016; Ex. 8, Santoro Notes, NPSD 1019.[6] MP admitted he had touched Sara inappropriately.  Ex. 7, Bowen Notes, NPSD 1016; Ex. 8, Santoro Notes, NPSD 1019.

9.   The same day, Principal Bowen called Dr. Betty Santoro, the District's Director of Elementary Education, and informed her of the reported assaults. Ex. 7, Bowen Notes, NPSD 1016. Principal Bowen then called Jane's mother and told her about the allegations against MP, including that Ms. Andrew had seen MP's hands under Jane's shirt during class some six months prior. *Id.*; Ex. 3, Doe Dep. at 53:19-24. That afternoon, Principal Bowen and Dr. Santoro decided that MP's behavior warranted a suspension, which was put in place that same day. Ex. 8, Santoro Notes, NPSD 1020. Principal Bowen also made a report to ChildLine (Pennsylvania's child abuse hotline) based on Sara's report of sexual assault by MP. Ex. 7, Bowen Notes, NPSD 1017.

---

[6] Principal Bowen did not ask MP about the incident with Jane in this interview. Ex. 8, Santoro Notes, NPSD 1019.

10. On April 14, 2015, Jane's mother told Jane that Sara had said MP had touched her inappropriately, and she asked whether MP had also touched Jane inappropriately. Ex. 3, Doe Dep. at 46:15-22, 54:1-10. Jane said yes. *Id.* at 46:21-22, 54:10.

11. Jane's parents contacted local police and made a police report about MP's unwanted sexual touching of Jane. Ex. 7, Bowen Notes, NPSD 1017.

12. Jane's mother called Dr. Santoro the next morning and informed Dr. Santoro that Jane said MP had sexually assaulted her in November, including putting his hands under her clothes, up her shirt, and down her pants ("the sixth-grade sexual assault"). Ex. 8, Santoro Notes, NPSD 1021-22. Jane's mother also told Dr. Santoro that Jane had witnessed MP touching girls inappropriately starting in fourth grade, and named two other girls, besides Sara. *Id.* at 1021; Ex. 10, Deposition of Todd Bauer at 311:1-10 (Aug. 26, 2021) ("Bauer Dep.").

13. Jane's mother then called Principal Bowen and Ms. Vaszily and shared the information she learned from Jane. Ex. 8, Santoro Notes, NPSD 1022; Dr. Santoro also shared this additional information with Dr. Diane Holben, who was the District's Assistant Superintendent. *Id.*

14. After discussing Jane's report that MP had inappropriately touched two additional students, Drs. Santoro and Holben called Principal Bowen. Ex. 8, Santoro Notes, NPSD 1022. Bowen told them he had already spoken with Jane's mother, who had provided him with the same information. *Id.* One of the administrators also contacted the District's Superintendent, Dr. Curtis Dietrich, and informed him of the allegations by Sara and Jane. *Id.* at NPSD 1019.

15. Ms. Vaszily then met with the two other girls that Jane said MP had touched inappropriately as well as a third sixth grade girl. Ex. 7, Bowen Notes, NPSD 1018. One of the girls, "Casey," reported to Ms. Vaszily that MP "touched her in the front and back of the bottom portion of her body." *Id.*; Ex. 8, Santoro Notes, 1022.

16. Ms. Vaszily and Principal Bowen called ChildLine and made reports about the inappropriate touching reported by both Jane and Casey. Ex. 7, Bowen Notes, NPSD 1018; Ex. 11, Deposition of Bill Bowen at 148:15-23 (July 26, 2021) ("Bowen Dep.").

17. By the end of the investigation, Principal Bowen concluded that MP's touching of both Jane and Sara was unwanted and sexual in nature. Ex. 11, Bowen Dep. at 92:11-20, 103:17-19. That was why MP's conduct "warranted that level of discipline" (a suspension). *Id*. at 103:21-23.

18. After the District learned how Ms. Andrew had responded to the November 2014 incident where she saw MP put his hand up Jane's shirt in class, it brought disciplinary action against her. Ex. 5, June 3, 2015 Ltr. to Andrew, NPSD 1005-06. The District's Director of Human Resources, Cheryl McCue, sent a letter to Ms. Andrew explaining that Andrew had demonstrated "poor judgment" in responding to the touching she saw, including by "fail[ing] to report harassment of a sexual nature to someone in authority," questioning Jane and MP about the incident together, and assuming consensual behavior. *Id.*; Ex. 11, Bowen Dep. at 76:3-7. The District suspended Ms. Andrew for two days and placed her on a performance improvement plan. Ex. 12, Agreement Regarding Holly Andrew-Garrett, NPSD 1001; Ex. 5, June 3, 2015 Ltr. to Andrew, NPSD 1006.

19. When Ms. Andrew filed a grievance to appeal the disciplinary action taken against her, Superintendent Dietrich denied the appeal. Ex. 13, June 10, 2015 Ltr. to Andrew from Superintendent Dietrich ("June 10, 2015 Ltr. to Andrew"), NPSD 997. In denying Andrew's appeal, Dietrich underscored the seriousness of MP's actions, explaining that "behavior of a male student reaching his hand underneath a female student's shirt in the area of her chest during … a sixth grade lesson should be very significant cause for concern," and that "when student behavior such as the behavior in this case is not appropriately addressed, the behavior is very likely to be repeated with victims continuing to suffer." *Id.*

6

*Jane Transferred Schools to Avoid MP, Who Continued Sexually Assaulting Other Students*

20. The following school year, Jane was set to begin middle school. However, because MP would be attending Jane's home school, Jane's parents requested that she attend a different middle school in the District to avoid MP. Ex. 14, Application for Transfer of School Attendance, NPSD 689; Ex. 15, May 5, 2015 Email from Director Santoro to Deborah McKay and Assistant Superintendent Holben NPSD 690; Ex. 11, Bowen Dep. at 136:14-137:6. The District granted this request. Ex. 14, Application for Transfer of School Attendance, NPSD 689.

21. While MP was in middle school, the District received a report that he had sexually harassed two additional female students. Ex. 16, Jan. 6, 2016 Suspension Ltr; Ex. 10, Bauer Dep. at 295:2-15. Jason Bashaw, an assistant principal at the District middle school that MP attended, disciplined MP with a three-day out-of-school suspension for this behavior and requested that his parent/guardian "reinforce [the District's] view of the seriousness of this problem." Ex. 16, Jan. 6, 2016 Suspension Ltr.

*Jane Encountered MP Again at Tech School in Ninth Grade*

22. In ninth grade, Jane wanted to attend North Montco Technical Career Center's ("North Montco") automotive program part-time, while taking the remainder of her classes at her middle school. Ex. 3, Doe Dep. at 73:5-23. North Montco is a specialized technical and career program for students from several private schools and five area school districts, including North Penn. Ex. 17, Deposition of Dawn LeBlanc at 17:4-15 (Aug. 24, 2021) ("LeBlanc Dep."). North Montco admitted Jane for her ninth-grade year. Ex. 3, Doe Dep. at 73:9-10. Unbeknownst to Jane, however, North Montco also admitted MP. *Id.* at 75:3-76:13.

23. When Jane arrived at North Montco in the fall, she saw MP in the hallway at school. Ex. 17, LeBlanc Dep. at 10:18-22; Ex. 3, Doe Dep. at 75:3-21. Distraught, Jane went to North

Montco's administrative office, where she explained that she had seen MP in the hallway, that he had previously sexually assaulted her, and that the two students were not supposed to be near each other for this reason. Ex. 17, LeBlanc Dep. at 10:16-12:9.

24. After Jane's report, North Montco Principal LeBlanc called District Superintendent Dietrich to discuss the situation between the two students. Ex. 17, LeBlanc Dep. at 24:6-21. Dietrich told LeBlanc that he was aware of MP's prior sexual assault on Jane. *Id*. at 24:12-16, 26:2-27:6.

25. Principal LeBlanc then put a safety plan in place for Jane that included arranging Jane and MP's schedules so they would not see each other at North Montco. Ex. 17, LeBlanc Dep. at 27:16-20; Ex. 18, Safety Plan, NPSD 484.

*MP Sexually Assaulted Jane Again in High School*

26. In the District, students begin high school in tenth grade. Ex. 19, Deposition of Peter Nicholson at 15:4-8 (Nov. 5, 2021) ("Nicholson Dep."). As Jane prepared to begin high school, she enrolled part-time in North Montco and part-time in North Penn High School, the main high school in the District. Ex. 20, August 2018 Meeting Notes, NPSD 1; Ex. 21, Deposition of Kira O'Brien at 30:18-20 (Aug. 23, 2021) ("O'Brien Dep.").

27. Before the start of the school year, Jane's mother requested a meeting with North Penn High School officials to discuss Jane's transition to the school. Ex. 20, August 2018 Meeting Notes, NPSD 1-4. In that meeting, Jane's mother explained that Jane and MP should not be in the same classes. Ex. 10, Bauer Dep. at 224:19-225:3, 256:3-17; Ex. 22, Notes of Kate Small (Aug. 22, 2018) ("Small Notes"), NPSD 535; Ex. 20, August 2018 Meeting Notes, NPSD 1; Ex. 3, Doe Dep. at 97:9-21. North Penn High School's Special Education Supervisor Kate Small attended the meeting with Jane's mother and noted that MP should not be "in class or halls near" Jane, and that

Jane was "the victim in the situation." Ex. 23, Notes of Megan Schoppe (Aug. 22, 2018), NPSD 536; Ex. 22, Small Notes, NPSD 535; *see also* Ex. 10, Bauer Dep. at 228:13-14; Ex. 3, Doe Dep. at 97:16-24.[7]

28. The District's 30(b)(6) designee, Assistant Superintendent Todd Bauer, testified that after this meeting, "it [was] pretty clear that the administration at the high school knew about" MP's sexual assault of Jane in sixth grade. Ex. 10, Bauer Dep. at 323:6-8.

29. Despite Jane's mother's warning to school officials that Jane and MP should not have classes together, the District assigned both students to the same social studies class, and their teacher assigned them seats right next to each other. Ex. 20, August 2018 Meeting Notes, NPSD 1; Ex. 22, Small Notes, NPSD 535; Ex. 25, Oct. 15, 2018 Memo from Kate Small, Doe 668.

30. On October 9, 2018, Jane reported to North Montco guidance counselor Kira O'Brien that she and MP had been seated next to each other in their social studies class at North Penn High School and that, there, MP had begun sexually assaulting her again. Ex. 21, O'Brien Dep. at 37:20-41:5; Ex. 25, Oct. 15, 2018 Memo from Kate Small, Doe 668.

31. Specifically, Jane told O'Brien that there were "inappropriate [sexual] things going on quite frequently" with MP, including that MP had been digitally penetrating her vagina during class without her consent since the beginning of the school year. Ex. 21, O'Brien Dep. at 37:20-41:5, 47:6-11; Ex. 3, Doe Dep. at 124:9-22.

32. O'Brien called the local police and Jane's mother. Ex. 3, Doe Dep. at 120:16-23; Ex. 21, O'Brien Dep. at 41:10-12, 48:19-23. Pete Nicholson, Principal of North Penn High School, then learned of MP's assaults on Jane. Ex. 19, Nicholson Dep. at 30:1-3. Nicholson, in turn, informed the High School's Supervisor of Special Education, Kate Small, and Assistant Superintendent

---

[7] Ms. Small attended the meeting because Jane had an individualized education plan ("IEP"). *See, e.g.,* Ex. 24, Jane's 2018 IEP, NPSD 13-47.

Todd Bauer about Jane's report that MP had sexually assaulted her again. Ex. 26, Deposition of Kate Small at 145:10-146:7 (Aug. 10, 2021) ("Small Dep."); Ex. 10, Bauer Dep. at 224:3-225:9, 231:11-17.

*Numerous District Officials Had Authority to Take Corrective Action to Address the Reports that MP Had Sexually Assaulted Jane*

33. At all relevant times, North Penn Superintendent Dietrich was the "CEO of the organization" at the District. Ex. 10, Bauer Dep. at 125:17-22. He was responsible for communicating with the school board, setting expectations for employees, and overseeing the District's response to serious disciplinary issues among the student population. *Id.* at 125:22-126:11.

34. Superintendent Dietrich had the authority to direct school principals and assistant principals to implement safety plans or other corrective measures as necessary. Ex. 10, Bauer Dep. at 127:6-130:24.

35. At all relevant times, the District's assistant superintendents, including Todd Bauer and Diane Holben, supervised the District's various directors and handled serious disciplinary matters, including expulsions. Ex. 10, Bauer Dep. at 38:7-39:22. As such, they had the authority to implement corrective measures as needed.

36. At all relevant times, the District's assistant superintendents also worked closely with the school board. Ex. 10, Bauer Dep. at 39:6-19. Assistant Superintendent Bauer in particular worked closely with the school board in designing and adopting new policies, including policies addressing sexual harassment. *Id.* at 39:6, 93:3-101:16.

37. At all relevant times, the District's sexual harassment policy defined sexual harassment, as including "unwelcome sexual advances … and other inappropriate … physical conduct of a sexual nature". Ex. 27, Board Policy #5150, NPSD 1049-50.

38. The District's Director of Elementary Education, Betty Santoro, was responsible for overseeing all thirteen of the District's elementary schools. Ex. 10, Bauer Dep. at 132:18-134:8. At all relevant times, she had the authority to implement student safety and discipline measures as needed. *Id.* at 134:2-8.

39. The District also had a Director of Special Education, Anne Marie Lucas, who oversaw special education across the District. Ex. 10, Bauer Dep. at 134:9-135:10, 221:24-222:11. At all relevant times, she had the authority to implement safety measures for students with disabilities, such as Jane. *Id.* at 134:9-135:10.

40. In each individual school, principals and assistant principals, such as Pete Nicholson, Jason Bashaw, and Bill Bowen, were tasked with providing "a safe educational environment for all students and staff." Ex. 10, Bauer Dep. at 108:19-109:17. This included overseeing and disciplining students on a day-to-day level. *Id*. at 126:5-12. At the District, "[m]ost student misconduct infractions are handled at the building level" by school principals and assistant principals. *Id.*

41. According to Board Policy #5150, the District's harassment policy in place while Jane was in sixth through tenth grades, building principals were responsible for investigating reports of sexual harassment. Ex. 27, Board Policy #5150, NPSD 1044-46; Ex. 10, Bauer Dep. at 93:11-24.

42. During that time, assistant principals and principals were also expected to report sexual misconduct to either the District's Title IX coordinator or to their immediate supervisor. Ex. 10, Bauer Dep. at 110:6-21, 116:1-13.

43. As building-level administrators, Pete Nicholson, Jason Bashaw, and Bill Bowen each had the authority to institute corrective measures in response to reports of sexual misconduct, including

11

creating and implementing safety plans or other measures that may be necessary in responding to reports of student misbehavior. Ex. 10, Bauer Dep. at 126:5-12, 129:1-131:4.

44. If a particularly serious incident occurred, District principals were expected to contact school officials with more authority, such as an assistant superintendent or the superintendent. Ex. 10, Bauer Dep. at 126:8-11.

45. Principal Bowen, Director of Elementary Education Santoro, Assistant Superintendent Holben, and Superintendent Dietrich each had notice by April 15, 2015, that MP had sexually harassed Jane in sixth grade. Ex. 7, Bowen Notes, NPSD 1016-18; Ex. 8, Santoro Notes, NPSD 1019, 1022; Ex. 5, June 3, 2015 Memo to Andrew, NPSD 1005; Ex. 13, June 10, 2015 Ltr. to Andrew, NPSD 997.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate as a matter of law where there are no genuine disputes as to any material fact. Fed. R. Civ. P. 56(a). Only factual disputes that may "affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the record cannot "lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz v. Cities Serv. Co.,* 391 U.S. 253, 288 (1968)). While the Court must view the evidence in the light most favorable to the non-movant, *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013), "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)) (alteration original).

**ARGUMENT**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This prohibition on sex-based discrimination in education permits victims of student-on-student harassment to recover money damages from their schools where the school has responded to reported harassment in a way that is clearly unreasonable in light of the known circumstances—that is, where the school has been deliberately indifferent to reported harassment. *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 633 (1999). In this case, Jane has brought two Title IX claims: a "post-report" claim, which involves a school's failure to respond properly to a sexual assault after it occurred and had been reported, and a "pre-assault" claim, which involves a school's failure to anticipate and prevent a sexual assault. In Count I, the post-report claim, Jane alleges that the District's deliberate indifference to MP's sexual harassment of her in sixth grade created a hostile educational environment. In Count II, Jane's pre-assault claim, she alleges that the District's deliberate indifference to numerous prior reports of MP's sexual harassment of her and others allowed MP to sexually assault Jane again in tenth grade.

**I.    Jane is Entitled to Summary Judgment on the Sexual Harassment and Actual Notice Elements of her Title IX Claim for Post-Report Deliberate Indifference.**

To prevail on her claim for post-report deliberate indifference to the sixth-grade sexual assault, Jane must show that: (1) she was sexually harassed in a District program or activity,[8] (2) the District had actual notice of the harassment, (3) the District was deliberately indifferent to the reported harassment, and (4) the harassment was so severe, pervasive, and objectively offensive

---

[8] Sexual harassment that takes place in class during school hours unquestionably occurs under a District "program or activity." *Davis,* 526 U.S. at 646.

that it deprived her of access to educational opportunities or benefits. *Davis,* 526 U.S. at 645-50.[9] The record in this case demonstrates that there is no question of material fact as to elements (1) and (2)—namely, that Jane was, in fact, sexually harassed by MP in sixth grade and that at least one appropriate person in the District had actual notice of the sexual harassment.

### A.  It is Uncontested that MP Sexually Harassed Jane in Sixth Grade.

Jane has established, as a matter of law, that MP sexually harassed her at school in sixth grade. To be considered sexual harassment, the conduct at issue must be unwelcome. *Dawn L. v. Greater Johnstown Sch. Dist.,* 586 F. Supp. 2d 332, 366 (W.D. Pa. 2008); *see also* Statement of Undisputed Material Facts ("SUMF") ¶ 37 (District's policy defined sexual harassment to include "unwelcome sexual advances … and other inappropriate … physical conduct of a sexual nature"). Here, MP subjected Jane to unwanted sexual touching during their sixth-grade language arts class in November 2014. SUMF ¶¶ 2-4, 17.

After investigating reports of the incident, the District concluded that MP had sexually harassed Jane. *Id.* at ¶ 17 (Principal Bowen concluded MP's sexual touching of Jane in sixth grade was unwanted); *see also id.* at ¶ 18 (Director McCue concluded Jane's teacher had mishandled the incident, demonstrating "poor judgment" by "fail[ing] to report harassment of a sexual nature to someone in authority"). The District is bound by these conclusions. *Mangual v. Prudential Lines, Inc.,* 53 F.R.D. 301, 302 (E.D. Pa. 1971) (statements made by employees acting within the scope of their employment are binding on the employer). These binding admissions demonstrate that there is no dispute of material fact as to whether MP sexually assaulted Jane in sixth grade. Thus,

---

[9] To succeed on a Title IX claim, a plaintiff must also show that the defendant institution received federal funds and is therefore subject to the law. *Davis,* 526 U.S. at 640. The District has admitted that it receives federal funding. Answer to Pls.' Compl., Dkt. 13 at 2.

14

Jane is entitled to summary judgment on the first element of her post-report Title IX claim (Count I)—namely, that she was sexually harassed in a District program or activity.

### B. It is Uncontested that the District Had Actual Notice of MP's Sixth-Grade Assault on Jane.

Jane is also entitled to summary judgment on the "actual notice" element of her post-report Title IX claim regarding the sixth-grade sexual assault. To demonstrate that a defendant had actual notice, a Title IX plaintiff must show that an "appropriate person"—that is, a school official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the school's behalf"—was aware of the alleged harassment. *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.,* 969 F.3d 120, 125-26 (3d Cir. 2020) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998)). An appropriate person need only "know[] the underlying facts" of the alleged harassment to have actual notice. *Bostic v. Smyrna Sch. Dist.,* 418 F.3d 355, 361 (3d Cir. 2005) (citation omitted). The alleged harassment need not be substantiated for a school to have "actual notice" or "actual knowledge." *Doe v. Fairfax Cnty. Sch. Bd.,* 1 F.4th 257, 268 (4th Cir. 2021), *reh'g denied*, 10 F.4th 406, *petition for cert. filed*, 1 F.4th 257; *see also Doe v. Galster,* 768 F.3d 611, 614 (7th Cir. 2014) ("To have actual knowledge of an incident, school officials must have witnessed it or received a report of it.").

Whether a school employee is an appropriate person is a question of fact. *Susquehanna Twp. Sch. Dist.*, 969 F.3d at 126, n.6. "A person's job title does not determine whether he or she is an 'appropriate person.'" *B.W. v. Career Tech. Ctr. of Lackawanna Cnty.,* 422 F. Supp. 3d 859, 876 (M.D. Pa. 2019). A wide range of school district officials may be considered "appropriate persons" depending on their particular role and whether they have the authority to "take corrective action to address the discrimination and institute corrective measures." *Bostic,* 418 F.3d at 360. And though job titles are not dispositive of whether an individual is an appropriate person, courts

typically consider administrators holding certain titles to be appropriate persons. For example, school principals with duties and responsibilities ordinarily associated with that position are generally considered "appropriate persons." *Id.*; *Poe v. Se. Delco Sch. Dist.,* 165 F. Supp. 3d 271, 280 (E.D. Pa. 2015) (school principal is an appropriate person); *Warren ex rel. Good v. Reading Sch. Dist.,* 278 F.3d 163, 170 (3d Cir. 2002) (Title IX's private right of action would be undermined if a principal were not considered an appropriate person). Similarly, courts typically consider assistant principals and superintendents to be "appropriate persons." *B.W. v. Career Tech. Ctr. of Lackawanna Cnty.,* 422 F. Supp. 3d at 877; *see also S.K. v. N. Allegheny Sch. Dist.,* 168 F. Supp. 3d 786, 801 (W.D. Pa. 2016) ("school principal and a school district superintendent are appropriate school officials"); *Does v. Se. Delco Sch. Dist.,* 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017) ("no question" that the principal, superintendent, and assistant superintendent were all appropriate persons).

The District's 30(b)(6) designee testified that assistant principals, principals, directors, assistant superintendents, and the superintendent all share responsibility in the District for overseeing and disciplining students, including the authority to institute corrective measures (or to direct others to do so). *See* SUMF ¶¶ 33-45.[10] Each individual in these roles—from assistant principal through superintendent—has the authority to respond to reports of sexual misconduct. They can discipline students, change their class schedules, or put safety plans in place. *Id.* at ¶¶ 33-44. The least senior among these positions—assistant principals and principals—are

---

[10] Testimony of a Rule 30(b)(6) designee binds the organization such that the designee's testimony is "deemed to be the testimony of the [organization] itself." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 212 (E.D. Pa. 2008). Though Rule 30(b)(6) testimony is not "a judicial admission absolutely binding on the party," *id.* (quoting 8A Charles Alan Wright et al., Fed. Prac. & Proc. § 2103 (Supp. 2007)), "the party may [not] retract prior testimony with impunity." *Id.* Courts preclude "eleventh hour alteration[s]," *id.* at 213, and therefore disregard affidavits submitted by non-movants to defeat summary judgment motions which directly contradict earlier Rule 30(b)(6) depositions and which lack reasonable explanation for not being offered earlier. *See id.* at 212-13.

responsible for overseeing and managing the District's students on a day-to-day basis, including disciplining students and addressing reports of misconduct, including sexual misconduct, as necessary. *Id.* at ¶¶ 40, 42. Accordingly, for the purposes of Title IX's actual notice requirement, each individual employed in the District as an assistant principal, principal, director, assistant superintendent, or superintendent is an "appropriate person" whose knowledge of a report of sexual misconduct is attributable to the District.

By the end of Jane and MP's sixth-grade year, four "appropriate persons" in the District had actual notice of the sixth-grade sexual assault: Principal Bowen, Director Santoro, Assistant Superintendent Holben, and Superintendent Dietrich. *See* SUMF ¶¶ 7-8 (Principal Bowen learned about the sixth-grade sexual assault allegation on April 10, 2015, through a call from Ms. Vaszily); *Id.* at ¶ 9 (Principal Bowen informed Director Santoro about sixth-grade sexual assault allegation on April 13, 2015); *Id.* at ¶ 13 (Director Santoro informed Assistant Superintendent Holben about the sixth-grade sexual assault allegation on April 15, 2015); *Id.* at ¶ 14 (an administrator informed Superintendent Dietrich of the sixth-grade sexual assault allegation on April 13, 2015). Each of these four high-level administrators had the authority to take corrective action in response to a report of sexual misconduct, though only one of them needed to have knowledge of the alleged sexual harassment at issue for the District to be considered on notice of the report. *Bostic,* 418 F.3d at 361; SUMF ¶¶ 33-44. As a result, the District cannot dispute that it had actual notice of the sixth-grade sexual assault by April 15, 2015. Jane is therefore entitled to summary judgment on the actual notice element of her post-report Title IX claim (Count I).

## II. Jane is Entitled to Summary Judgment on the Actual Notice Element of Her Title IX Claim for Pre-Assault Deliberate Indifference.

To succeed on her pre-assault deliberate indifference claim (Count II), Jane must demonstrate that an appropriate person at the District (1) had actual notice of facts indicating a

substantial danger to students, and (2) acted with deliberate indifference to that danger. *Doe C.D. v. Career Tech. Ctr. of Lackawanna Cnty.,* No. 3:20-0088, 2020 WL 1165837, at \*6 (M.D. Pa. Mar. 11, 2020); *see also Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist.,* 400 F.3d 360, 363 (6th Cir. 2005). The previously reported harassment need not be harassment of the plaintiff herself. *G.S. ex rel. J.A. v. Sch. Dist. of City of Monessen,* No. 11-1643, 2012 WL 1328566, at \*4 (W.D. Pa. Apr. 17, 2012) (quoting *Doe v. Sch. Bd. of Broward Cnty.,* 604 F.3d 1248, 1257 (11th Cir. 2010)). For this type of claim, a school has actual notice if an appropriate person at the institution "knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Hall v. Millersville Univ.,* 22 F.4th 397, 410 (3d Cir. 2022) (quoting *Bostic,* 418 F.3d at 361).

Here, it is indisputable that the District had actual notice that MP posed a substantial risk of sexually harassing students by the time he and Jane began tenth grade. Not only did the District have notice of MP's sexual assault of Jane in sixth grade (*see* Section I.B, *supra*), but it knew of allegations that MP had sexually harassed at least five other students by the time he entered North Penn High School. SUMF ¶¶ 7, 9 (Principal Bowen and Director Santoro knew about Sara's report of sexual assault by MP when MP and Jane were in elementary school); *Id.* at ¶ 14 (Superintendent Dietrich knew about the allegations that MP had sexually assaulted Sara and Jane while the students were still in sixth grade); *Id.* at ¶ 12 (during the sixth-grade investigation of allegations that MP had sexually assaulted Jane and Sara, Jane's mother told Principal Bowen that MP had sexually assaulted two other students since fourth grade); *Id.* at ¶ 21 (Assistant Principal Bashaw concluded that MP sexually harassed two additional students while he was in middle school); *Id.* at ¶ 27 (Jane's mother reminded District officials about MP's sixth-grade sexual assault of Jane before Jane began tenth grade); *Id.* at ¶ 28 (District's 30(b)(6) designee admitted "it [was] pretty

clear that the administration at the high school knew about" the sixth-grade sexual assault when Jane began tenth grade).

Moreover, the District's response to these reports unquestionably demonstrates that it was aware of the substantial danger MP posed to students by the time he and Jane entered tenth grade. Not only did the District have notice of MP's prior sexual assaults, it concluded that several of the reported sexual assaults had, in fact, occurred. SUMF ¶ 17 (Principal Bowen concluded MP's touching of Jane in sixth grade was unwanted and sexual in nature); *Id.* at ¶ 18 (Director McCue referred to sixth-grade sexual assault as "harassment of a sexual nature"); *Id.* at ¶ 21 (Assistant Principal Bashaw suspended MP for sexual harassment when MP was in middle school).[11] The District's response to some of the harassment reports also shows it understood the severity of allegations against MP: the District made reports to Childline, the Pennsylvania state child abuse hotline, in response to MP's admitted sexual assaults of Sara and the allegation that MP had sexually assaulted Jane and Casey in elementary school. *Id.* at ¶¶ 9, 16. In addition, the District suspended MP twice based on the sexual assault reports—first in sixth grade and again in middle school. *Id.* at ¶ 9 (involving sexual assaults of Jane and Sara); *Id.* at ¶ 21 (involving sexual assaults of two middle school students).

Officials as high up as the District's superintendent understood the danger MP posed to students long before Jane started tenth grade: While Jane and MP were in sixth grade, Superintendent Dietrich admitted that "when student behavior such as the behavior in this case

---

[11] As explained above, statements of District employees acting within the scope of their employment— including Principal Bowen's, Director McCue's, and Assistant Principal Bashaw's statements here—are binding on the District. *See Mangual v. Prudential Lines, Inc.,* 53 F.R.D. at 302.

[referring to MP's sixth-grade sexual assault of Jane] is not appropriately addressed, the behavior is *very likely to be repeated* with *victims continuing to suffer.*" *Id.* at ¶ 19 (emphasis added).[12]

This mountain of evidence demonstrates that Jane is entitled to summary judgment on the actual notice element of her pre-assault Title IX claim (Count II): five appropriate persons in the District—including the Superintendent—had notice of at least one allegation of sexual harassment by MP by the time he and Jane began tenth grade. Superintendent Dietrich even admitted he understood that MP posed a risk of further harassment. It is indisputable that the District knew of the substantial risk MP posed to students before Jane reported that he had sexually assaulted her again in tenth grade.

## CONCLUSION

For the reasons stated above, Plaintiff Jane Doe respectfully requests that the Court grant summary judgment in her favor, and against Defendant North Penn School District, on the sexual harassment and actual notice elements of her Title IX claim for post-report deliberate indifference (Count I) and on the actual notice element of her Title IX claim for pre-assault deliberate indifference (Count II).

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Date:   March 31, 2022</td><td>By: s/ Laura E. Laughlin</td></tr>
<tr><td></td><td>Laura E. Laughlin (311896)<br>Messa & Associates, P.C.<br>123 S. 22nd Street<br>Philadelphia, PA 19103<br>Tel: (215) 568-3500<br>Fax: (215) 568-3501<br>llaughlin@messalaw.com</td></tr>
</table>

---

[12] Dietrich made this admission when denying Ms. Andrew's appeal of her suspension for her poor response to the sixth-grade assault. This admission is binding on the District. *See Mangual v. Prudential Lines, Inc.,* 53 F.R.D. at 302.

Adele P. Kimmel*
Alexandra Z. Brodsky*
Mollie L. Berkowitz†*
Public Justice, P.C.
1620 L Street, NW
Suite 630
Washington, DC 20036
Tel: (202) 797-8600
Fax: (202) 232-7203
akimmel@publicjustice.net
abrodsky@publicjustice.net
mberkowitz@publicjustice.net

*Admitted *Pro Hac Vice*
† Application to the D.C. Bar pending;
Admitted to practice in New York.