IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | ) | Case No.: 2:20-cv-05142 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH PENN SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT NORTH PENN SCHOOL DISTRICT'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF JANE DOE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant NORTH PENN SCHOOL DISTRICT (the "District"), by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, files this Memorandum in Opposition to Plaintiff Jane Doe's ("Jane's") Motion for Partial Summary Judgment. In response to Jane's Motion, the District states as follows:

I. COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS

A. Jane's Sixth-Grade Year

This case involves allegations of student-on-student sexual harassment. (*See generally* Pl.'s Compl., attached here as **Exhibit A**.) Specifically, Jane asserts that at various points throughout her education within the District, she was sexually harassed and assaulted by a male student ("MP"). (*Id.*)

In the 2014-2015 school year, Jane and MP were both attending Gwynedd Square Elementary School as members of the sixth-grade class. (Jane's Dep. 20:14-20, 23:6-8, 27:24-

1

28:2, Nov. 2, 2021, attached here as **Exhibit B**; Plaintiff's Mother's Dep. 11:21-23, Nov. 2, 2021, attached here as **Exhibit C**.[1])

One day in November 2014, while the class was engaged in a group activity in which Jane and MP were paired together, the special education aid for that class and Jane's case manager – Holly Garrett ("Garrett")[2] – saw Jane and MP touching hands underneath their desks, and she saw MP's hand going into Jane's shirt. (Exhibit A ¶ 2; Exhibit B 27:3-10, 31:21-32:6, 33:12-34:13, 34:23-35:10; Garrett Dep. 8:10-18, 36:4-37:17, 155:7-9, July 28, 2021, attached here as **Exhibit D**.) Garrett called the students into the hall. (Exhibit B 35:11-36:2; Exhibit D 36:4-37:17, 41:9-42:2, 138:14-139:7.) Garrett completed office referral slips for both, questioned them about their behavior, warned them about the inappropriateness of their actions, and then just sent them back inside the classroom rather than the office. (Exhibit D 43:1-4, 46:3-8, 131:19-132:14.)

In April 2015, other female students at Gwynedd Square Elementary School reported that they had been inappropriately touched by MP. Upon hearing this report, the school's principal and counselors were also made aware of the prior interaction between Jane and MP, and of Garrett's failure to report it. (Exhibit B 46:15-47:5, 48:9-49:7; Exhibit C 13:5-11; Exhibit D 50:3-18, 70:25-71:19.) It was then reported that MP had inappropriately touched Jane on multiple subsequent occasions. (Exhibit B 39:14-40:12, 46:4-13, 48:9-49:7; Julie Doe Dep. 10:7-11:12, Nov. 2, 2021, attached here as **Exhibit E**.[3])

Once the elementary school administration became aware of the situation, the students' parents were notified, and the matter was reported to the police. (Exhibit B 54:11-55:22, 56:23-57:6; Exhibit C 13:23-14:9, 21:8-18; Bowen Dep. 84:21-86:10, 87:13-19, 95:6-22, 104:17-105:5,

---

[1] Plaintiff's Mother's name has been altered in this Response to protect Jane Doe's privacy.
[2] Holly Andrews is now known as Holly Garrett.
[3] Julie Doe is Jane's older sister. Her name has been altered here to protect Jane Doe's privacy.

July 26, 2021, attached here as **Exhibit F**.[4]) The school's principal, William Bowen, also called his immediate supervisor to notify her about what had occurred. (Exhibit F 91:10-92:20.)

Additionally, when MP's conduct came to light, the elementary school administration moved MP to another class so that he would not be able to interact with Jane and the other female students. (Exhibit B 57:10-58:18; Exhibit C 25:6-19; Exhibit D 161:17-163:2; Exhibit F 97:17-99:16, 111:8-22.) Jane even admits that after the administration was made aware of MP's conduct, they "kept him . . . really well hidden from" the female students. (Exhibit B 58:4-10.) Further, after discussing the matter with MP – who admitted to his conduct – and his parents, MP was given an in-school suspension. (Exhibit F 88:21-90:11, 101:9-103:23.) Teachers and staff who interacted with MP were also instructed to keep a close eye on him during common periods of the day to monitor his behavior. (*See* Exhibit D 159:3-162:17; *see also* Exhibit F 204:7-206:1.)

Ultimately, neither MP's nor Jane's parents wanted further involvement from child-protective services or police, so the matter was not further pursued with local authorities. (*See* Exhibit B 56:23-57:6; Exhibit F 113:19-115:7, 227:12-228:2.) Nonetheless, the District took the matter seriously. Both Garrett and Ruth Divver – the main teacher for Jane's class – were called to discuss the situation with District administration. (*See* Exhibit F 128:22-129:13.) Garrett – who had been primarily responsible for the failure to report the interaction between Jane and MP – was told that her handling of the situation was inappropriate; she was told that any such occurrences should be immediately reported to the administration so that the authorities and parents could be notified. (Exhibit D 68:15-69:19, 116:3-117:18; Exhibit F 162:6-24, 168:4-16.) Further, Garrett was placed on unpaid suspension, and she received failing marks on her teacher evaluation for that year. (Exhibit D 79:12-80:1, 107:22-110:8, 111:17-25, 153:17-154:3; Exhibit F 219:18-20,

---

[4] William Bowen is the principal for Gwynedd Square Elementary School.

221:10-222:20; McCue Dep. 319:4-320:12, 363:10-364:24, Aug. 25, 2021, attached here as **Exhibit G**[5]; Dietrich Dep. 202:5-19, 203:13-18, Aug. 11, 2021, attached here as **Exhibit H**.[6])

At the end of that sixth-grade year, Jane's mother decided that she wanted to ensure that Jane and MP would not have to interact in middle school. Consequently, rather than attending Penndale Middle School, which was the middle school that Jane would have otherwise attended, Jane's mother asked that Jane be permitted to attend Pennbrook Middle School. (Exhibit B 59:3-61:2; Exhibit C 24:19-25:5.) The District granted that request, and Jane and MP had no contact with each other for the entirety of their seventh- or eighth-grade years. (Exhibit B 69:23-70:17; Exhibit C 28:21-29:2.)

### B. Ninth Grade and High School

When Jane started her ninth-grade year, she attended both Pennbrook and North Montco Technical Career Center, which offers specialized vocational training to students, part time. (*See* Exhibit B 70:20-23.) Shortly after she was accepted into the technical school program, however, she switched to attending school at that campus full time as part of a pilot program. (Exhibit B 73:11-23, 81:18-82:21.)

Right when the school year began, however, Jane saw MP in the hallway and discovered that they would be attending the same technical school, although they would not be part of the same program. (Exhibit B 74:11-19, 75:3-13; LeBlanc Dep. 10:13-22, Aug. 24, 2021, attached here as **Exhibit K**.[7]) After school the first day that Jane saw MP, she went home and reported the sighting to her family. (Exhibit B 77:21-78:5; Exhibit C 34:23-35:13; Exhibit E 20:4-12.) Jane's mother contacted the technical school's staff to ensure that Jane and MP would remain apart.

---

[5] Cheryl McCue is the human resources director for the District and was, at all times relevant to this matter, also the Title IX coordinator for the District.
[6] Curtis Dietrich is the superintendent for the District.
[7] Dawn LeBlanc was the principal of the North Montco Technical Career Center.

(Exhibit C 35:18-37:11.) Although Jane's mother wanted MP barred from the school and the program entirely, that was not a viable action. (*See* Exhibit B 79:12-80:17; Exhibit C 37:23-40:1; Exhibit H 51:13-52:15, 223:4-19, 257:8-12; O'Brien Dep. 17:1-18:13, Aug. 23, 2021, attached here as **Exhibit L**.[8]) Nonetheless, upon learning of the situation, the staff at the technical school immediately put measures into place to ensure that Jane and MP would not have to interact. (Exhibit B 81:10-13, 83:7-10; Exhibit K 10:13-11:11, 14:17-15:9, 23:23-25:16; Exhibit L 23:12-25:16.) A safety plan was created so that the two students would be in different classes, travel through different hallways, and leave through different exists. (Exhibit B 83:18-84:9; Exhibit C 42:3-21; Exhibit K 28:18-30:20; Exhibit L 23:12-25:16, 67:10-14; Exhibit H 220:18-221:22.) Jane was also assigned a staff security member to ensure her safety. (Exhibit B 84:10-22; Exhibit C 43:5-44:3.) Further, a special counselor was made available to Jane for her to speak with when needed. (Exhibit L 10:8-12:17.)

The safety measures enacted at the technical school appeared to have been successful because there were no reported direct interactions between Jane and MP at that location. (*See* Exhibit B 83:11-17.) Notably, however, because of behavioral and academic problems, the technical school did not believe that remaining there full time was in Jane's best interests, so the following year, she was scheduled to attend the technical school part time and the neighboring North Penn High School part time. (*See* Exhibit B 95:12-16; Exhibit C 49:3-8; Exhibit K 32:5-34:16; Exhibit L 28:3-30:20, 69:8-70:9.)

Between ninth and tenth grade, Jane's mother discussed with North Penn High School's administration the importance of keeping Jane and MP apart. (Exhibit B 97:9-98:1; Exhibit C 49:17-50:10; Exhibit L 32:16-36:7; *see also* Small Dep. 209:1-19, Aug. 10, 2021, attached here as

---

[8] Kira O'Brien is an assistant program counselor at the North Montco Technical Career Center.

**Exhibit J**.[9])  In a meeting that included Kathryn Small ("Small"), who worked as an assistant director of special education for the District, Jane's mother also made clear that while she wanted to ensure that Jane and MP never interacted, only necessary personnel were to be told about the situation.  (*See* Exhibit J 45:1-13, 52:19-54:20, 57:2-19.)  She specifically indicated that none of Jane's teachers needed to know about the issue.  (*Id.* 58:9-60:8, 106:3-21.)  Consequently, following the meeting, and in accordance with the instructions provided by Jane's mother, Small told only Peter Nicholson ("Nicholson") – the high school's principal – and the assistant principal about the issue.  (*Id.* 58:9-60:18, 76:5-78:1, 81:20-83:22, 210:7-17.)  Additionally, the safety plan implemented by the technical school was continued, although Jane continually attempted to avoid its protections and, eventually, she cancelled it entirely.  (Exhibit B 96:15-97:8, 108:21-109:15; *see also* Exhibit J 62:21-64:20.)

On August 23, 2018, Small pulled the course schedules for Jane and MP and compared them to ensure that they had no overlapping classes.  (Exhibit J 86:7-87:9, 88:11-21, 90:5-20, 152:16-21, 209:20-24.)  None existed.  Small then went on a short vacation, and when she returned, she notified the principals that her prior check had revealed no overlap between the students' schedules.  (*Id.* 90:10-91:5.)  Classes began shortly afterward.

Unfortunately, in the days between when Small checked the schedules and when classes started, there was a shift in the students' schedules, which resulted in Jane and MP being placed in the same social studies class.  (Exhibit B 100:12-102:3, 102:21-103:12; Exhibit C 59:24-60:8.)  In her Motion, Jane misleadingly contends that the District "assigned both students to the same social studies class."  (*See* Mot. for Partial Summ. J. at 9.)  That is plainly not what happened.  The District did not make a conscious choice to place the two together.  Rather, it is clear that efforts

---

[9] Kathryn Small was previously the supervisor for special education with the District.

were made to ensure they were not in any classes together. Yet because of some unforeseen change in schedules that caused the system to redo those schedules, they nonetheless ended up in the same class. Moreover, that class apparently also had a seating chart that resulted in Jane and MP being seated directly next to each other. The teacher for that class, however, was not aware of the situation between Jane and MP – because Jane's mother had asked that Jane's teachers not be told – so he was not aware of any problem resulting from that seating arrangement.

Critically, despite that it was apparent immediately to Jane that she and MP were in a class together, Jane never reported that fact either to school officials or to her own mother. (*See* Exhibit B 103:18-105:17; Exhibit C 50:15-21.) In October 2018 – more than a month later – Jane was failing her social studies class, so her teacher was going to instigate a transfer. (*See* Bauer Dep. 298:18-300:21, Aug. 26, attached here as **Exhibit I**[10]; Exhibit J 162:21-165:6.) Jane would be moved to a lower-level social studies class in the hopes that her grades would improve. It was only after the decision to transfer Jane was made that she elected to notify anyone that she was in a class with MP. (Exhibit B 111:3-9, 117:3-23; Exhibit C 50:22-51:11; Exhibit K 38:5-23, 45:11-23; Exhibit L 68:13-17; Exhibit I 243:16-245:13, 298:18-300:21; Nicholson Dep. 154:20-155:21, Nov. 5, 2021, attached here as **Exhibit M**.) Further, Jane indicated that during that period while the two were in the class together, MP had allegedly begun sexually harassing and assaulting her again. (Exhibit B 109:19-110:23, 111:15-113:5, 122:2-9; Exhibit K 45:11-23.)

As soon as school officials learned that Jane and MP were in the same class and of MP's alleged misconduct, they immediately acted to rectify the situation. (*See* Exhibit K 54:20-55:12.) Jane was again permitted to return to the technical school full time. (Exhibit B 128:18-129:1; Exhibit C 56:22-57:20, 58:8-11; Exhibit K 66:22-67:9.) Jane's parents and the police were notified

---

[10] Todd Bauer is an assistant superintendent for the District.

about MP's reported misconduct. (Exhibit B 120:12-121:20, 126:14-17; Exhibit C 51:20-52:18, 53:6-15; Exhibit L 41:6-20, 49:3-12; Exhibit M 69:20-71:16.) Administration officials within the District interviewed teachers, students, and case managers. (*See* Exhibit I 258:23-259:15, 260:1-263:2, 275:3-14.) Notably, the police inquiry did not result in any charges being pressed against MP. (Exhibit B 128:9-17; Exhibit L 53:8-23; *see also* Exhibit C 60:17-23.[11]) Further, Jane's mother did not complete the harassment form to provide additional information on the specifics of the allegations, which would have allowed administrators within the District to further investigate. (*See* Exhibit I 277:1-282:13.)

Despite those appropriate and reasonable corrective efforts, Jane has now brought this lawsuit against the District. (*See generally* Exhibit A.) She brings three causes of action against the District: (1) violation of Title IX, 20 U.S.C. § 1681 for failure to report sexual harassment resulting in a hostile educational environment; (2) violation of Title IX, 20 U.S.C. § 1681 regarding prior sexual harassment resulting in future harassment; and (3) violation of Jane's constitutional rights under 42 U.S.C. § 1983 for failure to train. (*Id.*) Jane has now moved for summary judgment on some of the elements of her claims. As shown below, that Motion must be, at least in part, denied.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where the pleadings, discovery responses, and any affidavits demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *M.S. v.*

---

[11] Jane went on to attend tenth grade at Northbridge High School, which transitioned to homeschooling as the year progressed due to COVID-19. (Exhibit B 134:13-135:2, 135:12-139:23, 140:14-141:6; Exhibit C 77:4-8, 82:2-7.) Jane eventually graduated from high school on time.

*Susquehanna Twp. Sch. Dist.*, No. 1:13-cv-02718, 2017 U.S. Dist. LEXIS 47916, at *17 (M.D. Pa. 2017). If the motion seeks summary judgment on a claim where the movant bears the burden of proof at trial, then the movant must state the essential elements of the claim on which summary judgment is sought and "point to specific evidence which supports" those elements. *Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc.*, No. 92-4228, 1994 U.S. Dist. LEXIS 7133, at *11 (E.D. Pa. May 18, 1994).

Once the movant meets this initial burden, the non-moving party must then produce evidence of specific facts showing that a genuine issue remains for trial. *Bird v. Borough of Moosic*, No. 3:18-cv02289, 2021 U.S. Dist. LEXIS 182854, at *7 (M.D. Pa. Sept. 24, 2021). Notably, the court must view all evidence, as well as all reasonable inferences drawn from the evidence, in favor of the non-moving party, and if any doubt remains as to whether the raised element has been satisfied, summary judgment should be denied. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007); *Corrado v. Super Fresh Food Mkts., Inc.*, No. 08-1905, 2009 U.S. Dist. LEXIS 118922, at *7-8 (E.D. Pa. Dec. 17, 2009); *Brunson v. Equitable Life Assurance Soc'y*, No. 85-1416, 1985 U.S. Dist. LEXIS 14051, at *1 (E.D. Pa. Nov. 8, 1985).

### III.  ARGUMENTS AND AUTHORITIES

As noted above, Jane has brought three causes of action against the District: (1) violation of Title IX, 20 U.S.C. § 1681 for failure to report sexual harassment resulting in a hostile educational environment; (2) violation of Title IX, 20 U.S.C. § 1681 regarding prior sexual harassment resulting in future harassment; and (3) violation of Jane's constitutional rights under 42 U.S.C. § 1983 for failure to train. (*See* Exhibit "A".) Jane's present Motion for Partial Summary Judgment concerns only the first two of those causes of action.

### A. Count I of Jane's Complaint

In her Motion for Partial Summary Judgment, Jane first argues that she is entitled to judgment as a matter of law as to the sexual harassment and actual notice elements of the Title IX claim stated in Count I of her Complaint. (*See* Mot. for Partial Summ. J. at 13-16.) Jane is correct to a limited extent.

Title IX prohibits "discrimination at educational institutions on the basis of sex, and allows recovery by victims of physical sexual abuse." *Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017). Discrimination in this context includes sexual harassment that would create a hostile educational environment. *See E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2010 U.S. Dist. LEXIS 124193, at *42 (M.D. Pa. Nov. 23, 2010). The prohibitions of Title IX extend both to harassment between faculty and students and that between students. *See Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 799-800 (3d Cir. 2004); *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 343-44 (W.D. Pa. 2011). To hold a school district liable for discrimination under Title IX, the plaintiff must show, in addition to harassment, the following elements: (1) that there was an "appropriate person" at the school; (2) who had actual knowledge that there was a danger to, or harassment directed at, the student; and (3) that that appropriate person acted with deliberate indifference to the situation. *Se. Delco Sch. Dist.*, 272 F. Supp. 3d at 688.

Jane's Motion requests the resolution of both the existence of sexual assault and actual notice of her claim. Specifically, Jane asserts that there is no genuine issue of fact as to whether she was sexually assaulted and that there is no issue of fact as to whether the District had notice of the harassment. Jane's is partially correct.

Initially, the District agrees that there is no question that Jane was sexually assaulted by MP while in the sixth grade at Gwynedd Square Elementary School. Jane has testified to having experienced such harassment by MP, and the District's representatives have stated that MP admitted to engaging in such conduct. There is therefore no dispute that Jane experienced harassment in the sixth grade.

The District additionally agrees that one or more "appropriate persons" were made aware of MP's assault on Jane. For purposes of a Title IX claim, an "appropriate person" means an individual who had "authority to address the alleged abuse and to institute corrective measures on the district's behalf." *Id.* (quotation omitted). A school's principal is an example of an appropriate person, while a teacher without administrative control over the faculty is not. *See E.N.*, 2010 U.S. Dist. LEXIS 124193, at *47; *see also Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 362 (3d Cir. 2005); *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 171-72 (3d Cir. 2002). As Jane correctly points out, one or more appropriate persons were made aware of the situation between Jane and MP toward the end of Jane's sixth-grade year.

While the District agrees that those two elements are arguably satisfied, it remains critical to emphasize that even if sexual harassment occurred, and even if an appropriate person was made aware of it, liability can only arise if the District was deliberately indifferent in its response to the harassment. *See Se. Delco Sch. Dist.*, 272 F. Supp. 3d at 688-89. And that element requires a showing that "an official decision by" the defendant was made "not to remedy the violation." *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008) (quotation omitted); *see also E.N.*, 2010 U.S. Dist. LEXIS 124193, at *49.

Jane has made no attempt to make such a showing here, and in fact, she cannot. As explained in extensive detail in the District's own Motion for Summary Judgment, the District was

11

definitely not indifferent to MP's conduct, and courts in this Circuit have repeatedly refused to impose liability in situations substantially similar to the present one. Consequently, while Jane might be entitled to partial summary judgment as to two isolated elements of her claim, such partial summary judgment is ultimately unavailing because she remains unable to prove the remaining elements of that claim.

### B. Count II of Jane's Complaint

Jane next argues that she is entitled to summary judgment as to the actual notice element of the Title IX claim contained in Count II of her Complaint. (Mot. for Partial Summ. J. at 17-20.) Specifically, Jane argues that there is no dispute that the District knew of the prior assault made against her, and it therefore knew of a substantial danger to her in the future. (*See id.*) Jane is incorrect.

To maintain her claim against the District, Jane must show the following: "(1) the school district received federal funds; (2) an appropriate person at the school (3) had actual knowledge of facts indicating a substantial danger to students; and (4) acted with deliberate indifference to that danger." *Doe C.D. v. Career Tech. Ctr.*, No. 3:20-0088, 2020 U.S. Dist. LEXIS 43186, at *12 (M.D. Pa. Mar. 11, 2020) (quotation omitted). Jane contends that because the District was made aware of MP's prior conduct against her in sixth grade, she has necessarily satisfied the first three of those required elements. She is incorrect.

While the District has conceded that it had actual notice of MP's prior conduct, it does not necessarily follow that the District had notice of any future threat to Jane by MP. Indeed, Jane has pointed to no evidence suggesting that in the years between Jane's sixth-grade year and her tenth-grade incident with MP that MP engaged in any similar conduct or that he posed any future expected threat to Jane or others. While Jane suggests that the District knew that MP had harassed

12

"at least five other students by the time he entered North Penn High School," that assertion is misleading. (*See* Mot. for Partial Summ. J. at 18.) The allegations of those five other students were all unverified. It appears that 3 occurred *before* Jane's sixth-grade incident was reported. The remaining 2 appear to have occurred in middle school in January of 2016. It therefore remains true that Jane has offered no evidence suggesting that MP posed any continuing or substantial risk by the time he entered high school. Neither has Jane pointed to any legal authority supporting the notion that an incident that occurred previously creates an inference of substantial risk of future harassment.

In other words, while the District did have actual notice of MP's prior conduct, it does not necessarily follow that the District in fact knew of any continuing substantial threat to Jane. And regardless, as explained above, even if the actual notice element of Jane's claim were satisfied here, the remaining required elements are absent. Jane has not shown, and cannot show, that the District was deliberately indifferent to any such alleged substantial danger. The District acted swiftly and properly to address any issues as soon as it became aware of them.

## IV.   CONCLUSION

Jane's Motion for Partial Summary Judgment is overreaching. While the District agrees that Jane was the victim of harassment by a fellow student and that the District gained actual notice of that harassment after it occurred, it remains the case that no other elements of Jane's Title IX claims against the District have evidentiary support. Consequently, it is critical to emphasize that Jane's present Motion must be limited to the specific issues raised: MP's harassment of Jane in the sixth grade and the District's awareness of that prior harassment. Jane has not shown that the District had any actual notice of a substantial danger of future harm to Jane, and she has certainly not shown that the District acted with deliberate indifference.

The District concedes that Jane's Motion is viable as to MP's prior sexual assault of Jane and the District's actual notice of that that prior assault. But Jane's Motion should be denied as to her allegation that the District had notice of a substantial danger to Jane and as to any other elements of Jane's Title IX claims.

Respectfully submitted,

*[signature]*

HENDRZAK AND LLOYD
MAUREEN A. JORDAN, ESQUIRE
Attorney ID #54629
*Attorney for Defendant*
*North Penn School District*
3701 Corporate Parkway, Suite 100
Center Valley, PA  18034
Tel.: (610) 709-8579
Fax.: (610) 709-8560
Email: maureen.jordan@zurichna.com

Dated: April 20, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, by and through her next friend Julie Roe, <br><br>Plaintiff,<br><br>NORTH PENN SCHOOL DISTRICT,<br><br>Defendant. | Case No.: 2:20-cv-05142 |

**CERTIFICATE OF SERVICE**

I, MAUREEN A. JORDAN, ESQUIRE, hereby certify that service of the foregoing was automatically accomplished on all counsel of record through CM/ECF Notice of Electronic Filing, in accordance with the Federal Rules of Civil Procedure on this 20th day of April, 2022.

HENDRZAK & LLOYD

_____
MAUREEN A. JORDAN, ESQUIRE
Attorney ID # 54629
*Attorney for Defendant,*
*NORTH PENN SCHOOL DISTRICT*
3701 Corporate Parkway, Suite 100
Center Valley, PA 18034
Tel: (610) 709-8579
Fax: (610) 709-8560
Email: maureen.jordan@zurichna.com

Dated: April 20, 2022