IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | CIVIL ACTION |
| | : | NO. 20-5142 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTH PENN SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    OCTOBER 19, 2022

This case arises from the alleged failure of Defendant
North Penn School District (the "District") to protect
Plaintiff, a minor student ("Jane"), from repeated sexual
assaults by a classmate during school hours over the course of
several years. Plaintiff brings three counts: (1) Deliberate
indifference to report of sexual harassment in violation of
Title IX, 20 U.S.C. § 1681 (resulting in a hostile educational
environment) (the "post-assault claim"); (2) Deliberate
indifference to prior sexual harassment in violation of Title
IX, 20 U.S.C. § 1681 (resulting in further sexual harassment);
(the "pre-assault claim"); and (3) Failure to provide essential
Title IX and sexual harassment training to administrators,
staff, students, and families in violation of 42 U.S.C. § 1983.

Plaintiff moves for partial summary judgment on two elements of her post-report claim (Count I) and one element of her pre-assault claim (Count II). See Pl's Mot. for Part. Summ. J., ECF No. 47. Because Defendant does not contest the motion for partial summary judgment as to Plaintiff's post-report claim, the motion will be granted as to those claims. However, the motion will be denied as to Plaintiff's pre-assault claim.

Defendant also moves for summary judgment on all Plaintiff's claims. See Def's Mot. for Summ. J., ECF No. 49. As set forth below, the motion will be denied as to all claims.

I.   **BACKGROUND**[1]

A.   **Elementary School**

Plaintiff began attending school in the North Penn School District as a kindergartener in 2008.[2] See Jane Doe's Student Reg. Form, ECF No. 47 Ex. 1. In 2014, Jane was a sixth-grade student in a language arts class co-taught by Holly Andrew[3] and Ruth Divver at Gwynedd Square Elementary School. See Deposition

---

[1] As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

[2] At all times relevant to this lawsuit, elementary school was from kindergarten though sixth grade, middle school was from seventh through ninth grade, and high school was from tenth to twelfth grade in the North Penn School District. See Pl's Mot. for Part. Summ. J., ECF No. 47 at n.3.

[3] Holly Andrew married after the relevant events in this case and is now known as Holly Garrett. Id. at n.4.

of Jane Doe (Nov. 2, 2021) ("Doe Dep."), ECF No. 47 Ex. 3 at
30:4-31:7. On November 17, 2014, Jane was partnered with a male
student, MP, to work on a project in language arts class when MP
reached underneath Jane's shirt and touched her chest. Id. at
32:3-34:22.

Although Ms. Divver had briefly stepped out of the
classroom, Ms. Andrew witnessed MP reach up the front of Jane's
shirt. See Deposition of Holly Garrett (July 28, 2021) ("Andrew
Dep."), ECF No. 47 Ex. 4 at 37:1-5, 41:20-24. She called both
students into the hallway, and assuming the touching was
consensual, Ms. Andrew told them that "if they promise[d] not to
do it again" they would not have to go to the principal's
office.[4] Id. at 37:6-12; June 3, 2015 Ltr. to Andrew from Human
Resources Dir. Cheryl McCue ("June 3, 2015 Ltr. to Andrew"), ECF
No. 47 Ex. 5 at NPSD 1005. MP continued to sexually assault Jane
regularly during class and in the hallways between classes over
the following months. See Doe Dep., ECF No. 47 Ex. 3 at 39:14-
40:22, 46:4-13.

---

[4] After the incident, Ms. Andrew completed "office referral
forms" for both Jane and MP, indicating that there had been a
minor disciplinary issue with "physical contact" and that she
responded to the incident by speaking with the students. Ms.
Andrew gave these forms to the classroom's lead teacher, Ms.
Divver, who put them in her own personal classroom files. See
Andrew Dep., ECF No. 47 Ex. 4 at 135:21-23.

On April 10, 2015, a Gywnedd Square teacher reported to District guidance counselor Kristen Vaszily that MP had sexually assaulted one of Jane's classmates, "Sara." See June 3, 2015 Ltr. to Andrew, ECF No. 47 Ex. 5 at NPSD 1005; Notes of Gwynedd Square Principal Bill Bowen ("Bowen Notes"), ECF No. 47 Ex. 7 at NPSD 1016. In an initial interview with Ms. Vaszily, Sara reported that MP touched her inappropriately under her shirt during class on April 1 and April 9, 2015. See Bowen Notes, ECF No. 47 Ex. 7 at NPSD 1016; Notes of Director of Elementary Education Betty Santoro ("Santoro Notes"), ECF No. 47 Ex. 8 at NPSD 1019; Notes of Guidance Counselor Kristen Vaszily ("Vaszily Notes"), ECF No. 47 Ex. 9 at NPSD 1024. Ms. Vaszily shared this information with Ms. Divver, who informed Ms. Vaszily that there had been a similar incident with MP and Jane earlier in the school year (the November 17, 2014 incident). See Bowen Notes, ECF No. 47 Ex. 7 at NPSD 1016. Ms. Vaszily then informed Gwynedd Square Principal Bill Bowen about both incidents. Id.

Principal Bowen investigated the incidents involving Jane and Sara. See id. at 16-18. Principal Bowen interviewed MP and asked specifically about Sara's allegation, and MP admitted that he touched Sara inappropriately. Id. at 1016. The same day, Principal Bowen called Jane's mother and told her about the allegations against MP, including that Ms. Andrew had seen MP's hands under Jane's shirt during class around six months prior.

4

Id. Later that same afternoon, Principal Bowen and Dr. Santoro,

the District's Director of Elementary Education, suspended MP

effective the same day. See Santoro Notes, ECF No. 47 Ex. 8 at

NPSD 1019.

On April 14, 2015, Jane's mother told Jane about Sara's

allegations against MP and asked whether MP had also touched

Jane inappropriately, which Jane confirmed. See Doe Dep., ECF

No. 47 Ex. 3 at 46:15-22, 54:1-10.[5] The next morning, April 15,

2015, Jane's mother called Dr. Santoro and informed her that

Jane said MP sexually assaulted her in November, including

putting his hands under her clothes, up her shirt, and down her

pants ("the sixth-grade sexual assault"). See Santoro Notes, ECF

No. 47 Ex. 8 at NPSD 1021-22. Jane's mother also told Dr.

Santoro that Jane had witnessed MP touching other girls

inappropriately starting in fourth grade, and named two other

girls, besides Sara.[6] Id. at 1021; Deposition of Todd Bauer (Aug.

26, 2021) ("Bauer Dep."); ECF No. 47 Ex. 10 at 311:1-10.

---

[5] Jane's parents then contacted local police and filed a police
report. See Bowen Notes, ECF No. 47 Ex. 7 at NPSD 1017.

[6] Ms. Vaszily then met with the two other girls that Jane said MP
had touched inappropriately as well as a third sixth-grade girl.
See Bowen Notes, ECF No. 47 Ex. 7 at NPSD 1018. One of the
girls, "Casey," reported to Ms. Vaszily that MP "touched her in
the front and back of the bottom portion of her body." Id.;
Santoro Notes, ECF No. 47 Ex. 8 at NPSD 1022.

Meanwhile, the District brought disciplinary action against Ms. Andrew for the failure to respond appropriately to the November 2014 incident where she saw MP put his hand up Jane's shirt in class. The District's Director of Human Resources, Cheryl McCue, sent a letter to Ms. Andrew explaining that Andrew had demonstrated "poor judgment" in responding to the touching she saw, including by "fail[ing] to report harassment of a sexual nature to someone in authority," questioning Jane and MP about the incident together, and assuming consensual behavior. See June 3, 2015 Ltr. to Andrew, ECF No. 47 Ex. 5 at NPSD 1005-06. The District suspended Ms. Andrew for two days and placed her on a performance improvement plan, which Ms. Andrew then appealed. See id. at 1006; Agreement Regarding Holly Andrew-Garrett, ECF No. 47 Ex. 12 at NPSD 1001; June 10, 2015 Ltr. to Andrew from Superintendent Dietrich ("June 10, 2015 Ltr. to Andrew"), ECF No. 47 Ex. 13 at NPSD 997.

Superintendent Dietrich denied the appeal, underscoring the seriousness of MP's actions, explaining that "behavior of a male student reaching his hand underneath a female student's shirt in the area of her chest during . . . a sixth grade lesson should be very significant cause for concern," and that "when student behavior such as the behavior in this case is not appropriately addressed, the behavior is very likely to be repeated with victims continuing to suffer." Id.

6

B.    __Middle School__

The next school year, 2015, Jane's parents requested that she attend a different middle school in the District from MP. See Application for Transfer of School Attendance, ECF No. 47 Ex. 14 at NPSD 689; May 5, 2015 Email from Director Santoro to Deborah McKay and Assistant Superintendent Holben, ECF No. 47 Ex. 11 at NPSD 690; Deposition of Bill Bowen (July 26, 2021) ("Bowen Dep."), ECF No. 47 Ex. 11 at 136:14-137:6. The District granted the request. See Application for Transfer of School Attendance, ECF No. 47 Ex. 14 at NPSD 689.

While MP was in middle school, the District received a report that he sexually harassed two additional female students. See Bauer Dep., ECF No. 47 Ex. 10 at 295:2-15; Jan. 6, 2016 Suspension Ltr., ECF No. 47 Ex. 16. Jason Bashaw, an assistant principal at the District middle school that MP was attending, disciplined MP with a three-day out-of-school suspension and requested that his parent/guardian "reinforce [the District's] view of the seriousness of this problem." See Jan. 6, 2016 Suspension Ltr., ECF No. 47 Ex. 16.

C.    __Ninth Grade and High School__

In 2017 while she was entering ninth grade, Jane wanted to attend North Montco Technical Career Center's ("North Montco") automotive program part-time, while taking the remainder of her classes at her middle school. See Doe Dep., ECF No. 47 Ex. 3 at

7

73:5-23. She was admitted to North Montco, but unbeknownst to Jane, MP was also admitted. Id. at 73:9-10, 75:3-76:13.

When Jane arrived at North Montco in the fall, she saw MP in the hallway at school and went the school's administrative office to explain that she had seen MP in the hallway, that he had previously sexually assaulted her, and that the two students were not supposed to be near each other for this reason.[7] See Deposition of Dawn LeBlanc (Aug. 24, 2021) ("LeBlanc Dep."), ECF No. 47 Ex. 17 at 10:16-12:9. North Montco Principal LeBlanc then put a safety plan in place for Jane that included arranging Jane and MP's schedules so they would not see each other at North Montco. Id. at 27:16-20; Safety Plan, ECF No. 47 Ex. 18 at NPSD 484.

The following year, 2018, as Jane prepared to start high school in tenth grade, she enrolled part-time at North Montco and part-time at North Penn High School, the main high school in the district. See August 2018 Meeting Notes, ECF No. 47 Ex. 20 at NPSD 1; Deposition of Kira O'Brien (Aug. 23, 2021) ("O'Brien Dep."), ECF No. 47 Ex. 21 at 30:18-20. Before the start of the school year, Jane's mother requested a meeting with North Penn High School officials to discuss Jane's transition to the school

---

[7] After Jane's report, North Montco Principal LeBlanc called District Superintendent Dietrich, who confirmed that he was aware of MP's prior sexual assault on Jane. See LeBlanc Dep., ECF No. 47 Ex. 17 at 24:6-12, 26:2-27:6.

and explained that Jane and MP should not be in the same classes. Id.; Bauer Dep., ECF No. 47 Ex. 10 at 224:19-225:3, 256:3-17; Notes of Kate Small (Aug. 22, 2018) ("Small Notes"), ECF No. 47 Ex. 22 at NPSD 535; Doe Dep., ECF No. 47 Ex. 3 at 97:9-21. In the meeting which included Kathryn Small, the High School's Supervisor of Special Education, Jane's mother emphasized that she only wanted a limited number of persons to be informed of the situation between Jane and MP, specifically indicating that she did not want teachers to know. See Deposition of Kate Small ("Small Dep."), ECF No. 50 Ex. J at 45:1-13, 52:19-54:20, 57:2-19, 58:9-60:8, 106:3-21.  In turn, Ms. Small only told Peter Nicholson, Principal of North Penn High School, and the assistant principal about the situation involving MP and Jane. Id. at 58:9-60:18, 76:5-78:1, 81:20-83:22, 210:7-17.

On August 23, 2018, Ms. Small arranged for the two students not to have overlapping classes. Id. at 86:7-87:9, 88:11-21, 90:5-20, 152:16-21, 209:20-24). Although there were no overlapping classes the first and only time Ms. Small checked, it turned out later that both students were assigned to the same social studies class, unbeknownst to the teacher. Id. at 90:10-91:5; Deposition of Jane Doe (Nov. 2, 2021), ECF No. 49 Ex. B at 100:12-102:3, 102:21-103:12; Deposition of Jane Doe's Mother (Nov. 2, 2021), ECF No. 49 Ex. C at 59:24-60:8.

On October 9, 2018, more than a month after she and MP had
been in the same class together seated side by side, Jane
reported to North Montco guidance counselor Kira O'Brien that
she and MP had been seated next to each other in their social
studies class at North Penn High School and that MP had begun
sexually assaulting her again. See O'Brien Dep., ECF No. 47 Ex.
21 at 37:20-41:5; Oct. 15, 2018 Memo from Kate Small, ECF No. 47
Ex. 25 at Doe 668. Ms. O'Brien reported it to the local police
and informed Jane's mother. Id. at 41:10-12, 48:19-23.

Principal Nicholson then learned of MP's assaults on Jane
at North Penn High School.[8] Deposition of Peter Nicholson (Nov.
5, 2021) ("Nicholson Dep."), ECF No. 47 Ex. 19 at 30:1-3. The
District did not interview MP or investigate Jane's allegation
itself, instead asking her to "write a report" about MP's recent
sexual assaults.[9] See Bauer Dep., ECF 47 Ex. 10 at 265:9-266:13,
262:4-6.

---

[8] Nicholson, in turn, informed Ms. Small and Assistant
Superintendent Todd Bauer about Jane's report that MP had
sexually assaulted her again. Small Dep., ECF 50 Ex. J at
145:10-146:7; Bauer Dep., ECF 47 Ex. 10 at 224:3-225:9, 231:11-
17.

[9] The District also checked with a couple students in the same
social studies class as Jane and MP to see if they had any
relevant information and asked the social studies teacher for a
written statement. Id. at 259:11-13, 262:10-15.

D. **Training**

While the District has produced evidence that it trains its employees on harassment generally, it has not produced any evidence that, prior to the incidents relevant to the law suit, it trained its employees on student-on-student sexual harassment. The District's liability expert's report so found, and this was confirmed by testimony from District employees.[10] See Expert Report of Betsy Smith, ECF No. 49 Ex. I at 12.

At the time, District leadership expected staff to train themselves to address peer harassment. Cheryl McCue, the District's Human Resources Director and Title IX Coordinator, explained that the District "reference[s]" its sexual harassment policies at start-of-school-year staff meetings, and that she "assumes" employees are familiar with these policies because

---

[10] For example, Principal Bowen testified that he could not recall whether Title IX training was offered to teachers while he was principal, and that he was not trained on Title IX until approximately 2018, well after Jane left Gwynedd Square Elementary. See Deposition of Principal Bill Bowen ("Def's Bowen Dep."), ECF No. 49 Ex. F at 23:4-15, 26:5-12. Ms. Andrew, the teacher who wrongly assumed MP's sixth-grade sexual assault of Jane was consensual, testified that she never received training about what conduct constitutes sexual harassment or how to respond to a student who reports harassment. See Deposition of Holly Garrett ("Def's Andrew Dep."), ECF No. 49 Ex. D at 28:7-11. She also admitted that she did not know what Title IX training was during Jane's sixth-grade year. Id. at 23:5-9, 23:15-16. Nor did Ms. Small recall receiving any Title IX training from the District. See Small Dep., ECF No. 50 Ex. J at 27:15-22.

they are available online. <u>See</u> Deposition of Cheryl McCue (Aug. 25, 2021) ("McCue Dep."), ECF No. 49 Ex. G at 341:2-20. Principal Bowen, for his part, explained that at Gwynedd Square Elementary, he asked teachers to review the applicable policies "on their own." Def's Bowen Dep., ECF No. 49 Ex. F at 200:17-201:1. District Assistant Superintendent Todd Bauer explained that when he became Assistant Superintendent, he received an "overwhelming" "stack of materials" to review in lieu of actual training on student-on-student sexual harassment. Def's Bauer Dep., ECF No. 49 Ex. J at 31:4-20.

Based on the District's failure to train its staff on student-on-student sexual harassment, Jane's liability expert concluded that the District's training—which pertained to state law reporting requirements and teacher-on-student sexual harassment—did not have any of the "critical properties" necessary to ensure District employees appropriately responded to student-on-student sexual misconduct. <u>See</u> Shakeshaft Expert Report, ECF No. 51-8 at 65, 68.

Plaintiff now seeks partial summary judgment on three elements of her claims, while Defendant seeks summary judgment on all Plaintiff's claims. The motion is fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56 (1963)). The Court views the facts in the light most favorable to the nonmoving party. Am. Eagle Outfitters, 584 F.3d at 581.

The standard is identical when addressing cross-motions for summary judgment. Lawrence v. City of Phila., 527 F.3d 299, 310

(3d Cir. 2008). When confronted with cross-motions for summary
judgment, "[t]he court must rule on each party's motion on an
individual and separate basis, determining, for each side,
whether a judgment may be entered in accordance with the Rule 56
standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d
612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright,
Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
§ 2720 (3d ed. 1998)).

## III. DISCUSSION

Plaintiff alleges that the District violated Title IX of
the Education Amendments of 1972 as well as Plaintiff's
constitutional and federal rights pursuant to 42 U.S.C. § 1983.
Title IX provides that "[n]o person . . . shall, on the basis of
sex, be excluded from participation in, be denied the benefits
of, or be subjected to discrimination under any education
program or activity receiving Federal financial assistance." 20
U.S.C. § 1681(a). This prohibition on sex-based discrimination
in education permits victims of student-on-student harassment to
recover money damages from their schools where the school has
responded to reported harassment in a way that is clearly
unreasonable, or deliberately indifferent, in light of the known
circumstances. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629,
633 (1999).

Plaintiff brings two Title IX claims: a "post-report" claim, which involves the school's failure to respond properly to a sexual assault after it occurred and had been reported, and a "pre-assault" claim, which involves a school's failure to anticipate and prevent a sexual assault. Additionally, Plaintiff brings a claim against the District for violating her rights by failing to train its teachers and administrators on how to identify, investigate, report, or prevent harassment pursuant to § 1983.

At the conclusion of discovery, Plaintiff filed a Motion for Partial Summary Judgment on three elements of two of its claims. Correspondingly, Defendant filed a Motion for Summary Judgment on all Plaintiff's claims.

### A.    COUNT I: POST-ASSUALT CLAIM

To prevail on her claim of student-on-student sexual harassment under Title IX, Plaintiff must prove: (1) she was sexually harassed in a District program or activity, (2) the District had actual notice of the harassment, (3) the District was deliberately indifferent to the reported harassment, and (4) the harassment was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities or benefits. Davis, 562 U.S. at 645-50.[11]

---

[11] To prevail on a Title IX claim, a plaintiff must also show that the defendant institution received federal funds and is

Plaintiff argues that there is no genuine dispute of material fact as to elements (1) and (2)—that Jane was sexually harassed by MP in sixth grade and at least one appropriate person in the District had actual notice of the sexual harassment. In response, Defendant argues Count I should be dismissed entirely because the District did not act with deliberate indifference, and thus Plaintiff cannot meet the third element necessary to support this claim.

### 1. Sexual Harassment

To prevail on a claim of sexual harassment, the conduct at issue must be unwelcome. Stroehman Bakeries Inc. v. Local 776, Intern. Broth. of Teamsters, 969 F.2d 1436, 1441-42 (3d Cir. 1992) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)); see also Pls.' Mot. for Part. Summ. J. at ¶37 (District's policy defined sexual harassment to include "unwelcome sexual advances . . . and other inappropriate . . . physical conduct of a sexual nature").

Here, both parties are in agreement that there is no factual dispute as to whether Plaintiff was sexually harassed by MP in sixth-grade at a District school. See Def's Opp. to Pl's Mot. for Part. Summ. J., ECF No. 50 at 11 ("[T]herefore there is

---

therefore subject to the law. Davis, 526 U.S. at 640. The District admits that it receives federal funding. See Answer, ECF No. 13 at 2.

no dispute that Jane experienced sexual harassment in the sixth grade."). Thus, Plaintiff's motion will be granted as the "sexual harassment" element in Count I.

### 2. Actual Notice

To establish that a defendant had actual notice, a Title IX Plaintiff must show that an "appropriate person"—someone "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the school's behalf"—was aware of the alleged harassment. M.S. ex. Rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125-26 (3d Cir. 2020) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). An appropriate person need only "know[] the underlying facts" of the alleged harassment to have actual notice. Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005) (citation omitted).

Again, both parties are in agreement and Plaintiff's motion will be granted as to the "actual notice" element in Count I. See Def's Opp. to Pl's Mot. for Part. Summ. J., ECF No. 50 at 11 ("As Jane correctly points out, one or more appropriate persons were made aware of the situation . . . .").

### 3. "Deliberately Indifferent"

Given that Plaintiff has satisfied the first two elements for a claim of sexual harassment under Title IX, the issue becomes whether the District was deliberately indifferent. The

deliberate indifference standard "is not a mere reasonableness standard and that to avoid liability a funding recipient must simply respond to known harassment in a manner 'that is not clearly unreasonable.'" Hall v. Millersville Univ., 22 F.4th 397, 410 (3d Cir. 2022) (rejecting the school's argument that it was not deliberately indifferent because "it did not just do 'nothing'") (quoting Davis, 526 U.S. at 649).

Courts have noted that a reasonable response includes a prompt inquiry into the matter. Dawn L. v. Greater Johnstown School Dist., 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008) ("The reasonable response doctrine implies a duty on the part of the funding recipient, upon notice of possible sexual harassment, to promptly investigate and if necessary to take remedial action") (citing Andreoli v. Gates, 482 F.3d 641, 643-44 (3d Cir. 2007)); Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393, 406 (E.D. Pa. 2019) ("Title IX regulations [] require complaints of sexual harassment to be investigated, with notice to the Title IX coordinator."). In an appropriate case, such as on a motion for summary judgment, a court may identify a response as not "clearly unreasonable" as a matter of law. Davis, 526 U.S. at 649.

Defendant argues that Plaintiff's claim that the District acted deliberately indifferent to the sexual assault claim is unsupported by evidence. Plaintiff responds that a reasonable

jury could find the District's response to MP's sexual
harassment of Jane was clearly unreasonable because it took
little action to ensure that Jane could continue her education
safely after the assaults, forcing her to transfer schools,
subjecting her to a hostile environment, and enabling MP's later
assaults.

Here, the evidence, as viewed in the light most favorable
to the Plaintiff, the party opposing the motion, demonstrates
that there is a genuine dispute of material fact as to whether
the District displayed deliberate indifference to MP's sexual
assault of Jane. Construing the evidence in the light most
favorable to Plaintiff, a reasonable jury could return a verdict
finding that the District did not make a reasonable inquiry into
the matter. Ms. Andrew, the teacher who discovered MP putting
his hands in Plaintiff's shirt, chose to speak to MP and Jane
together after the incident instead of separately and assumed
the touching was consensual. It was not until another student
reported her encounter with MP that Principal Bowen called
Jane's mom and asked Jane's mom to talk to Jane about the
incident with MP. Thus, even though one of the District's
teachers saw the sexual harassment firsthand, there was no
investigation into the incident until another student reported
similar behavior from MP. Under these circumstances, there is a
genuine dispute of material fact regarding whether the

District's response rose to the level of deliberate
indifference.

For a post-assault claim, a court looks at both whether a
school's response was reasonably calculated to prevent
reoccurrence of the harassment and also at the school's efforts
to ensure the survivor's continued access to education in the
wake of the reported abuse. See Goodwin v. Pennridge Sch. Dist.,
389 F. Supp. 3d 304, 317-18 (E.D. Pa. 2019); Doe v. Pennridge
Sch. Dist., 413 F. Supp. 3d 393, 404-07 (E.D. Pa. 2019); MDB v.
Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 578-80 (W.D.
Pa. 2019).

Where a school's response is clearly insufficient to ensure
a victim can safely continue her education, or to ameliorate any
post-assault hostile environment, it may constitute deliberate
indifference. See Goodwin, 389 F. Supp. 3d at 317-18 (holding
jury could find school was deliberately indifferent when it
failed to address hostile environment stemming from rape); Doe
v. Pennridge Sch. Dist., 413 F. Supp. 3d at 404-07 (holding
school could be deliberately indifferent where its failed
response forced student into inferior alternative school); MDB,
386 F. Supp. 3d at 578-80 (holding defendant was deliberately
indifferent where its failure to address sexual abuse caused
plaintiff to transfer out of school).

Construing the evidence in the light most favorable to
Plaintiff, there is a genuine dispute of material fact as to
whether the District acted with deliberate indifference as to
Jane's continued education. The District offered little in way
of a plan to keep Jane safe after sixth-grade. Though the
District took steps to keep MP away from Jane for the remaining
two months of her sixth-grade school year, no plan was created
or implemented to make sure Jane would be safe when they
returned to the same school after summer break. This prompted
Jane's mother to have Jane transferred to another middle school.
It was not until MP showed up at North Montco and Jane reported
that fact to the District that it offered an unsuccessful long-
term safety plan to keep the two apart.

Under these circumstances, the Court will deny summary
judgment for the District on Plaintiff's Title IX post-assault
claim because a reasonable jury could return a verdict for
Plaintiff. MP did sexually harass Plaintiff, appropriate school
authority had actual knowledge, and there is a genuine dispute
of material fact as to whether the District was deliberately
indifferent to the sexual harassment.

### B.   COUNT II: PRE-ASSAULT CLAIM

A school district may be liable under Title IX for failing
to prevent a student's sexual harassment when "(1) an
appropriate person at the school (2) had actual knowledge of

facts indicating a substantial danger to the students and (3) acted with deliberate indifference to that danger." Does v. Se. Delco Sch. Dist., 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017) (citing Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005)). Once a school district knows of a risk that one of its students poses to other students, it has an obligation to respond to that risk in a manner that is not deliberately indifferent. See C.K. v. Wyre, 751 F. App'x 179, 184 (3d Cir. 2018). Plaintiff moves for summary judgment on the second element only, while Defendant moves to dismiss the entirety of Plaintiff's claim.

Plaintiff produced evidence that the District had received reports from at least five other students by the time MP sexually assaulted Jane again in tenth grade. Based on this information, Plaintiff moved for summary judgment on the "actual notice" element of her pre-assault claim. See Pl's Mot. for Part. Summ. J., ECF No. 47 at 17-20. Defendant points out that Plaintiff's assertion is misleading because the allegations of the five other students were all unverified and counters that while an appropriate authority had actual knowledge of the sexual assault against Jane in sixth grade, that knowledge did not indicate that Jane faced a substantial danger from MP. See Def's Resp. in Opp. to Pl's Mot. for Part. Summ. J. ("Def's Resp."), ECF No. 50 at 12-13.

A school has actual knowledge when it knows that an individual "posed a substantial risk of harassing students in general," not just one student specifically. See C.K., 751 F. App'x at 184. Viewing the evidence in the light most favorable to Defendant, the party opposing partial summary judgment, there is a genuine dispute of material fact as to whether the reports from other students were unverified and thus whether the District had actual knowledge that the student body at large faced a substantial danger from MP. Thus, Plaintiff's motion for partial summary judgment will be denied as to Count II.

Defendant again argues that Plaintiff's claim that the District acted deliberately indifferent is unsupported by evidence. Defendant avers that the reason MP was in the same class as Jane was due to an inadvertent mistake, not deliberate indifference. See Def's Mot. for Summ. J., ECF No. 50 at 19. Additionally, Defendant points out that Jane did not inform anyone that MP was in her class and the teachers had no way of knowing that there was an issue between MP and Jane because Jane's mother told administrators not to tell the teachers about the sixth-grade sexual harassment. Id. at 18-19.

In response, Plaintiff points out that Defendant acted with deliberate indifference to the gravity of the risk MP continued to pose to Jane and other female classmates after elementary school. Construing the evidence in the light most favorable to

Plaintiff, there is a genuine dispute of material fact as to whether the District acted with deliberate indifference.

First, where the "gravity of risk" of future sexual harassment is readily "apparent," it is clearly unreasonable for a school district not to put significant safeguards in place to prevent future abuse. Se. Delco Sch. Dist., 272 F. Supp. 3d at 663, 689-90. Plaintiff points out that the only step the District took at the start of the tenth-grade school year to address the risk MP posed was to check his and Jane's schedules for overlapping classes once though the District knew that students' schedules changed regularly during the add/drop period. See Pl's Resp. in Opp. to Def's Mot. for Summ. J. ("Pl's Resp."), ECF No. 51 at 18.

Second, a school district acts with deliberate indifference when it downplays students' reports of sexual harassment, such as by categorizing reported sexual harassment as less serious misconduct. See Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393, 411 (E.D. Pa. 2019) (holding that a school may not employ "a shadow procedure that fail[s] to accurately categorize student complaints"). Plaintiff avers that the District downplayed MP's abuse by miscategorized the multiple sexual assaults in his elementary school as a single instance of "obscene lang[uage]/gesture" in his disciplinary record. Pl's Resp., ECF No. 51 at 19. Plaintiff contends that this, in turn,

24

ensured that future administrators and staff and other District
schools would be unaware of the danger MP presented, thereby
making it substantially more likely that MP would be able to
continue sexually assaulting his classmates. Id. Plaintiff
further contends that as MP continued to harass additional
classmates at his middle school, the District merely suspended
MP for three days knowing that its previous suspension did not
stop MP's pattern of assaulting his classmates. Id. at 20.

Plaintiff argues that because the District mischaracterized
MP's sixth grade conduct, which prevented future school
authority from appreciating the true nature and scope of the
risk he posed to other students, and continued punishing him in
a manner that it already knew failed to deter his conduct, the
District acted with deliberate indifference. Id. at 16-21.
Viewing the evidence in the light most favorable to Plaintiff,
the non-moving party, there is a genuine dispute of material
fact as to whether the District acted with deliberate
indifference with respect to preventing MP's future harm against
other students in the District. Thus, the District's Motion for
Summary Judgment will be denied as to Count II.

C.    **COUNT III: FAILURE TO TRAIN**

To state a claim under § 1983, a plaintiff must allege that
the defendant, acting under color of state law, deprived [her]
of a right secured by the United States Constitution or federal

law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50
(1999). To establish liability under § 1983, a plaintiff must
demonstrate (1) a constitutional violation by a municipal actor
(2) that was caused by a municipal policy or custom. Monell v.
Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). "Policy
is made when a 'decisionmaker possess[ing] final authority to
establish a municipal policy with respect to the action' issues
an official proclamation, policy, or edict." Andrews v. City of
Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting
Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

A municipality's failure to train or discipline its
employees may be "properly thought of as a city 'policy or
custom' that is actionable under § 1983" only where the failure
"amounts to deliberate indifference to the rights of persons
with whom the [employees] come into contact." City of Canton v.
Harris, 489 U.S. 378, 388-89 (1989). Plaintiffs "must identify a
failure to provide specific [training or discipline] that has a
causal nexus with their injuries and must demonstrate that the
absence of that specific [training or discipline] can reasonably
be said to reflect a deliberate indifference to whether the
alleged constitutional deprivations occurred." Reitz v. Cnty. of
Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

The alleged failure to train must have caused "a pattern of
violations." Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d

Cir. 2000). Accordingly, to defeat the summary judgment motion, Plaintiff must show that there is a question of material fact as to whether "there was: (1) an 'identified deficiency' in the training (2) caused by a deliberate indifference to her rights (3) that 'actually caused' the constitutional violation." Goodwin v. Pennridge Sch. Dist., 389 F. Supp. 3d 304, 321 (E.D. Pa. 2019) (quoting Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014).

Defendant notes that administrators and faculty within the District received periodic training on issues relating to harassment and child safety, that the District's policies relating to such matters were constantly available to them, and that they were expected to review those policies. Def's Mot. for Summ. J., ECF No. 49 at 19-21. Accordingly, Defendant contends that Plaintiff cannot show that there was any deficiency in the District's training as a whole or over an extended period and involving multiple individuals, and Plaintiff cannot show that there was a pattern of constitutional violations caused by any such deficiency. Id.

Plaintiff responds by arguing that the District has produced no evidence that it trained any staff on identifying, responding to, or remedying student-on-student harassment. Pl's Resp., ECF No. 51 at 27-31. Defendant did not produce any staff training or materials addressing Title IX or student-on-student

harassment in response to Plaintiff's discovery request, and several of the key District employees involved in this case testified that the District had not trained them on Title IX. See Def's Bowen Dep., ECF No. 49 Ex. F at 23:4-15, 26:5-12; Def's Andrew Dep.", ECF No. 49 Ex. D at 28:7-11; Small Dep., ECF No. 50 Ex. J at 27:15-22. Additionally, Plaintiff points out that the training Defendant claims to have provided its employees only "relat[ed] to harassment and child safety" but did not include information on student-on-student sexual harassment or Title IX. Pl's Resp., ECF No. 51 at 30.

Next, Plaintiff avers that the District provided no training on peer sexual harassment even though it was extremely likely that this kind of sexual harassment would occur and it was highly predictable that school officials "lacking specific tools to handle that situation w[ould] violate [students'] rights." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 409 (1997). Plaintiff contends that under circumstances where sexual assault claims arise frequently in the public school context, the policymakers' decision not to train the faculty reflects deliberate indifference.[12] Pl's Resp., ECF No. 51 at 31-32.

---

[12] For context, and although not binding, the U.S. Department of Education guidance and regulations requires schools to train their employees on responding to student-on-student harassment, including sexual harassment. See, e.g., 2010 Bullying Guidance

Finally, Plaintiff argues that there is a genuine dispute
of material fact as to whether Defendant's failure to train
caused Jane constitutional injury. Sex-based discrimination at
school, including sexual assault, violates Equal Protection.
Davis, 526 U.S. at 649-50. Plaintiff argues that she was
deprived of her equal protection right to attend school free
from sexual harassment as a direct result of the District's
failure to train its employees. Pl's Resp., ECF No. 51 at 33.

Here, there is a genuine dispute of material fact as to the
adequacy of the District's Title IX and/or student-on-student
sexual harassment training. Moreover, there is also a genuine
dispute of material fact as to whether the District's failure to
update the training policy after Ms. Andrew witnessed the
November 17, 2014 incident constitutes deliberate indifference.
Considering the evidence in the light most favorable to
Plaintiff, a reasonable jury could find that under the
appropriate training, the District might not have failed to
accurately note on MP's profile that Gwynedd Square suspended
him for sexual abuse of his classmates, to inform MP's middle
school about his history of sexual abuse, to warn North Montco

---

at 7; 34 C.F.R. § 106.45 (2020) (requiring that "Title IX
Coordinators, investigators, decision-makers, and any person who
facilitates an informal resolution" receive training on sexual
harassment and investigating complaints thereof).

staff and teachers before sending Jane and MP to the same school, and to ensure that MP and Jane did not share classes in tenth grade. Thus, because a reasonable jury could find that the District's failure to train its employees on Title IX and student-on-student sexual harassment caused Plaintiff to suffer repeated sexual harassment in violation of the Equal Protection Clause, Defendant's motion for summary judgment on Count III will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Partial Motion for Summary Judgment will be granted in part and denied in part. The motion will be granted as to Plaintiff's post-assault claims under Title IX (Count I) and will be denied as to Plaintiff's pre-assault claims under Title IX (Count II). Defendant's motion for summary judgment will be denied.

An appropriate order follows.